# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZACHARY FRIDLINE,** | : | |
| | : | |
| | : | Case No. 4:24-cv-01770-MWB |
| **Plaintiff** | : | |
| | : | Hon. Matthew W. Brann |
| vs. | : | |
| | : | |
| **INTEREST MEDIA, INC.,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |


## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT INTEREST MEDIA'S MOTION TO DISMISS

## I. INTRODUCTION

Defendant Interest Media's (Interest Media or Defendant)'s motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate Interest Media's liability for the text messages at issue. Specifically, Plaintiff has pled that he received the at least eight text messages from various telephone numbers, but which all contained the Defendant's same link. In so doing, it attempts to manufacture artificial doubt as to the clear purpose of the calls and the Defendant's use of its own links in the text messages it is alleged to have sent. At the pleadings stage, this is sufficient to allow this Court to conclude that the Defendant sent the text messages at issue. The Court cannot credit the Defendant's generalized denials and red-herring arguments to the contrary at the pleadings stage. The proper resolution of Defendant's motion requires the Court to permit this case to proceed to discovery to test the Plaintiff's claims because he has set forth a plausible claim for direct liability for multiple text messages against Defendant. The motion to dismiss is based on illogical assumptions that minimize the Plaintiff's investigative pursuits while maximizing assumptions based on utterly false premises. Defendant's motion should therefore be denied in its entirety.

## II. FACTUAL BACKGROUND

The original complaint in this matter was filed on October 16, 2024 against the Defendant based upon the Plaintiff's receipt of at least 8 automated text messages containing nonsensical text designed by the Defendant to evade carrier-level spam and fraud detection algorithms, and which each such message contained a link to Interest Media's marketing platform, which then sent the Plaintiff to various advertisers to which Interest Media would receive an attribution commission.

Defendant's instant motion followed. In it, the Defendant rests on faulty, unproven premises and minimizes the Plaintiff's well-pled allegations at the pleadings stage, including,

1

critically, the Plaintiff's pleading of the message contents containing links to the Defendant, that the Defendant then forwarded on to advertisers. Namely, the Defendant faults the Plaintiff for insufficiently and allegedly non-specifically alleging cherrypicked facts sufficient to give rise to the inference at the pleadings stage that the Plaintiff received multiple text messages from the Defendant. But those allegations are belied by the link, the Defendant's business model, and the facts and circumstances surrounding the calls, and take advantage of the fact that the Defendant *illegally* appears to have used a "SIM Farm" to send the text message spam at issue. In so doing, any purported failure to plead additional facts resulted solely form the Defendant's own misconduct at hiding the source of the calls. This response follows.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed

only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

### IV.  ARGUMENT

A.   *Plaintiff adequately pleads liability for the calls because he pleads facts which permit a reasonable inference that Defendant placed them.*

In essence, the Defendant attempts the classic "we didn't do it" defence by disguising it as a challenge to the Plaintiff's allegations at the pleadings stage. Defendant uses its own efforts to obfuscate its texting conduct in support of its meritless contention that it did not send any of the illegal text messages at issue. But Plaintiff has pled that he received eight text messages from the Defendants and included in his pleadings the fact that each of the messages included links to the Defendant's marketing platform, and even went so far as to provide the example of one such link. Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). Because the Plaintiff has adequately alleged the Defendant's liability for the text messages, based on facts, not legal conclusions, such as the content of the messages and links, this matter should proceed.

The Defendant's counter-inferences, which it isn't even permitted to bring up at the pleadings stage, belie logic and common sense. Start, for example, with Interest Media's contention that none of the telephone numbers are associated with Missouri, where Interest Media is located. That may be true, but that's a distinction without a difference that matters for nothing. Illegal telemarketers often use all manner of telephone numbers, from various locations, in order to obfuscate their identities, especially when, as here, the messages are sent as part of a nationalized calling campaign. With the advent of cell phones and digital telephone services,

long gone are the days where one's area code was a good indication of a telephone's location.[1]

For its part, Interest Media is unable to point to a *single case* dismissing a TCPA complaint on the basis that the area code of the calls did not match the headquartered location of the caller. And although it's not pled in the complaint, what the Plaintiff suspects occurred, as will be more fully fleshed out in discovery, is that Interest Media operates so-called "SIM Farms" across the country, which use various types of cellular infrastructure, including geographically diverse prepaid SIM cards from various MVNOs, to send millions of illegal text messages *en masse. See* Sergii Diachenko, *SIM Farms: A Modern-Day Trojan for Mobile Network Operators(MNOs)*, DECISION TELECOM (Jul. 29, 2024), https://decisiontele.com/news/sim-farms-are-modern-trojan-mobile-operators.html ("SIM farms . . . use a huge number of SIM cards and SIM boxes to send unwanted bulk SMS messages over the mobile networks, qualifying their activities as spammy and possibly criminal.").

Defendant cannot attempt to use its own illegal conduct in using a suspected "SIM Farm," or other possible methods through which it might hide the fact that it owns the telephone numbers at issue, to overcome the reasonable inference at the pleadings stage that it sent the messages because the messages all contained Interest Media's link. Interest Media's unsupported and conclusory claim that it does not "initiate or sent messages or calls to individuals" should not be allowed to overcome the Plaintiff's well-pled allegations in this regard, either. Interest

---

[1] For those too young to remember, a telephone used to "ring off the hook" in a "style now seen only in old movies" and have a physical dial that a user had to turn to select a series of letters and digits to call. In those days, there were no such things as area codes, and the first two digits of a phone number were represented by letters, not numbers. After the dial spun back to its home position, you did it again to select the second number. You did it sequentially until you dialed all the necessary numbers. Out of town calls could take a while. And there were a lot more calls to wrong numbers in those days. *See Perrong v. Victory Phones LLC,* 519 F. Supp. 3d 193, 195 n.1 (E.D. Pa. 2021); *Perrong v. Bradford*, No. 2:23-CV-00510-JDW, 2023 WL 6119281, at *3 n.1 (E.D. Pa. Sept. 18, 2023).

Media's proverbial fingerprints were found on the gun at a murder scene. If that kind of evidence is sufficient to establish probable cause for an arrest of a person's whose fingerprints appear on a weapon, it's more than sufficient to entitle the Plaintiff to discovery to test the contention that Interest Media sent the calls and its unsupported counter-allegation that it did not. Even so, Interest Media is again unable to point to a single case holding that a TCPA plaintiff must establish the caller's ownership of the telephone number in question in order to state a claim; were that the case, any entity that illegally spoofed their telephone number could dismiss a case at the pleadings stage because it doesn't own the phone number it used to send the calls.

  At the same time, Defendant downplays the fact that the Plaintiff caught them red-handed by pleading in the Complaint that he clicked a link and identified that the link was owned by and directed him to Interest Media, who then directed him to an advertiser. That's sufficient for this Court to draw the reasonable inference that Interest Media was responsible for sending the text messages pled in the complaint, all the more likely though use of a SIM Farm, because each contained "cryptic, nonsensical text, designed to evade carrier and phone-level spam detection algorithms, and a link" and were sent as part of an affiliate marketing scheme to drive customers to advertisers who wish to drive traffic to their websites, which *is* Interest Media's line of business. (Compl. ¶ 25, 26); *Advertisers*, INTEREST MEDIA, https://interest-media.com/advertisers/ [https://archive.md/kvNgu] ("Acquired with absolute precision, utilizing first-party data and consumer insights, Interest Media attracts high-value customers showing a clear connection to your brand. Advertisers are given the ability to reach these ideal customers within niche audiences, paying only for real conversions.").

  That the Plaintiff did not allege the specific Interest Media links that he identified in the text of his complaint is no matter, either; he has pled that they all led to Interest Media. (Compl.

5

¶ 27, 28) The Rules require a "short and plain statement" demonstrating an entitlement to relief, and the Plaintiff need not plead the exact link of every text message in the interest of brevity. FED. R. CIV. P. 8(a)(1). A TCPA plaintiff need not plead the exacting detail regarding every message he received. Nevertheless, the Plaintiff is prepared to do so in the event that this Court finds his pleading in this regard inadequate. At the same time, the crux of the matter remains that, at the pleadings stage, the Plaintiff has sufficiently alleged Interest Media's involvement in the text message scheme at issue to permit this matter to proceed to discovery.

It belies logic and common sense to argue that Interest Media was not the sender of the text messages alleged in the Complaint, when the links all led to various advertisers using Interest Media's platform to advertise their products and services. Interest Media's job is akin to a radio announcer encouraging listeners to visit a store for which the announcer is paid a commission; Interest Media explicitly advertises its ability to "attract high-value customers" directly to its advertisers' brands, and the advertisers pay a commission to Interest Media for each customer Interest Media sends their way, a service that Interest Media touts it is specialized in. Nevertheless, the contention that someone else was sending out text messages with Interest Media's links that benefitted Interest Media is a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that the Defendant directly placed the illegal messages at issue here or, in the alternative, that the messages were sent on Interest Media's behalf.

It makes little sense that anyone else would be sending out links using Interest Media's platform to generate commissions for Interest Media; the most eminently logical conclusion is that Interest Media sends its advertising links itself to generate advertising commissions for

itself. There is no other plausible reason for why any naturally self-interested entity would send out text messages that benefit a third party. The Court's analysis can end there. The Plaintiff has unquestionably pled that he received eight messages from the same entity–the Defendant–within a twelve-month period, to his number on the National Do Not Call Registry. The purpose of these calls was clearly to sell the Plaintiff various advertisers' goods and services that they placed for advertisement with Interest Media and hired Interest Media to drive traffic to.

And neither of the cases Interest Media cites for the counter-proposition are especially availing. The Court in *Smith v. Vision Solar LLC*, No. CV 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020), dismissed a single plaintiff's claims, without prejudice, when they simply made the conclusory allegation that the telephone number was "confirmed to belong to Defendant." And the Court *Zelma v. Burke*, No. CV 2:16-02559-CCC-MF, 2017 WL 58581, at *4 (D.N.J. Jan. 4, 2017), dismissed the plaintiff's claims against a single defendant, CTI, when the complaint made the confusing and contradictory allegations that "Americas [sic] Choice Construction and/or All American Chimney & Duct Cleaning" placed the calls, but also conclusorily pled that "Defendant CTI itself placed the phone calls." Not so here, where the Plaintiff not only pleads the fact that the messages contained affiliate links associated with Interest Media, but also provided the exact link flow for one such message as an example.

B. *Plaintiff does not allege ATDS use; he alleges violations of the Do Not Call Registry. Defendants' arguments against ATDS use are irrelevant.*

Defendant also perplexingly argues that the Plaintiff cannot allege that Interest Media used an Automatic Telephone Dialing System (ATDS) to send the text messages at issue. The TCPA contains may provisions prohibiting various types of wrongful, anti-consumer calling conduct. Among those are prohibitions against using an "automatic telephone dialing system" or an "artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). The Defendant's motion discusses

7

how the text messages were not automated in a manner to constitute a violation of § 227(b). That's correct: the Plaintiff does not allege that he received any messages in violation of that section. The complaint doesn't assert claims under Section 227(b) of the TCPA for use of an ATDS. On the contrary, it asserts claims under Section 227(c) for the sending of text messages to a number on the National Do Not Call Registry. And it is well-established that a Plaintiff asserting a Section 227(c) claim need not prove the use of an ATDS. "The statute, on its face, does not require the use of an ATDS." *Bradford*, 2023 WL 6119281, at *2. Accordingly, because pleading a Do Not Call Registry claim does not require proving the use of an ATDS, the Defendant's pleading on this point should also be disregarded.

## V.  CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety because the Plaintiff has sufficiently pled Interest Media's responsibility for the text messages at issue. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

Dated: January 13, 2025

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

# **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

January 13, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com