## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY FRIDLINE, | No. 4:24-CV-01770 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| INTEREST MEDIA, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

### APRIL 21, 2025

### I.    BACKGROUND

On October 16, 2024, Zachary Fridline filed a one-count class action Complaint against Interest Media, Inc. ("Interest Media") alleging a violation of the Telephone Consumer Protection Act ("TCPA").[1] Interest Media then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on December 12, 2024.[2] That motion is now ripe for disposition; for the reasons that follow, it is denied.

### II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[3] and

---

[1]    Compl., Doc. 1.
[2]    Motion to Dismiss, Doc. 10.
[3]    550 U.S. 544 (2007).

*Ashcroft v. Iqbal*,[4] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[6]

## III.    FACTUAL ALLEGATIONS

### A.    The Parties

Zachary Fridline is an individual residing in Northumberland County, Pennsylvania.[7] Interest Media is a Missouri Corporation that does business in Pennsylvania.[8]

### B.    Plaintiff's Cell Phone

Fridline has a telephone number of (570) XXX-XXXX, which had been on the National Do Not Call Registry for over a year prior to his receipt of the first text

---

[4]    556 U.S. 662 (2009).

[5]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[6]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[7]    Compl., Doc. 1 ¶ 5.

[8]    *Id.* ¶ 6.

message at issue in this case.[9] Plaintiff "uses the number for personal, residential, and household reasons;" he has never used the number to conduct business.[10]

### C.    The Text Messages

Fridline has never "consented or requested in any way to receive calls from Defendant."[11] He also has never done business with Interest Media.[12] Despite this, "Plaintiff received a total of at least 8 text messages from the Defendant's telephone numbers . . . as part of a telemarketing campaign."[13]

"Each of the text messages contained cryptic, nonsensical text, designed to evade carrier and phone-level spam detection algorithms, and a link."[14] These messages were part of an affiliate marketing scheme, "a process whereby an advertiser pays a company . . . to drive traffic to its website."[15] To do so, these text messages are sent "*en masse*."[16]

"The text messages led to internet properties either owned by Interest Media or an affiliate offer promoted on Interest Media's platform."[17] To reach this

---

[9]   *Id.* ¶ 16.
[10]   *Id.* ¶¶ 19-20.
[11]   *Id.* ¶ 21.
[12]   *Id.* ¶ 22.
[13]   *Id.* ¶ 23. Fridline received text messages from the following numbers: 216-474-5734; 616-881-4896; 713-930-5057; 507-441-3453; 401-616-0406; 818-272-0198; 305-797-8736; and 360-622-0634. *Id.*
[14]   *Id.* ¶ 25. For example, on October 5, 2022, Fridline received a text message from 818-272-0198 that stated "Please do not disregard this" and contained the following link: 8cGB.com/4smt1CCK. *Id.* ¶ 31.
[15]   *Id.* ¶ 26.
[16]   *Id.*
[17]   *Id.* ¶ 27.

Case 4:24-cv-01770-MWB    Document 16    Filed 04/21/25    Page 4 of 7


conclusion, Fridline "track[ed] the tracking links in the text messages"[18] and "capture[d]" a tracking link.[19] This link directed recipients to "imtrk.go2cloud.org," which is owned by Interest Media.[20] "The Go2Cloud domain is owned by HasOffers, which is an affiliate tracking platform."[21] "The website imtrk.hasoffers.com is . . . Interest Media's account on the HasOffers platform."[22]

These messages "were sent to solicit the purchase of various property, goods, and services offered by advertisers who paid Interest Media to drive traffic to their websites."[23] "By way of example, some of the advertisers included gift card 'giveaway' scams, lead generation websites for sweepstakes, offers for televisions, and offers for iPhones."[24]

## IV.    DISCUSSION

Defendant contends that the factual allegations, as described above, are insufficient to make out Fridline's TCPA claim. For a violation of Title 47, United States Code, Section 227(c)(5), Plaintiff must plead that he (1) "receive[d] multiple

---

[18] *Id.* ¶ 28.
[19] *Id.* ¶¶ 28-29.
[20] *Id.*
[21] *Id.* ¶ 30.
[22] *Id.* ¶ 31.
[23] *Id.* ¶ 32.
[24] *Id.* ¶ 33.

4

calls within twelve months;" (2) "by or on behalf of the same entity;" (3) "on a residential phone registered on the" Do Not Call ("DNC") List.[25]

Interest Media's arguments largely target Plaintiff's ability to establish the second element, that the messages were sent by or on behalf of the same entity. Despite Defendant's best efforts, the Court concludes that Fridline adequately demonstrated this element. He alleged that "[e]ach of these text messages contained cryptic, nonsensical text, designed to evade carrier and phone-level spam detection algorithms, and a link."[26] "The text messages led to internet properties either owned by Interest Media or an affiliate offer promoted on Interest Media's platform."[27] These messages were part of an affiliate marketing strategy used to "solicit the purchase of various property, goods, and services offered by advertisers who paid Interest Media to drive traffic to their websites."[28]

Unlike the caselaw Interest Media has relied upon, Plaintiff does not merely "believe[] the identified phone number[s]" are "owned by defendant."[29] Instead, Plaintiff described how Defendant's business model is predicated on solicitation and explained how the tracking links directed recipients to "internet properties either

---

[25] *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing *Huber v. Pro Custom Solar, LLC*, No. 19-01090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020) (Mariani, J.)).

[26] Compl., Doc. 1 ¶ 25.

[27] *Id.* ¶ 27.

[28] *Id.* ¶ 32.

[29] *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr 15, 2019).

owned by Interest Media or an affiliate offer promoted on Interest Media's platform."[30] He then identified an example tracking link that he traced to a website owned by Interest Media found on a known affiliate tracking platform domain that Defendant maintains an account with.[31] These allegations provide the requisite factual support "to justify that a call came from" Defendant.[32] Nor can it be said that these allegations are unclear or conclusory. Plaintiff has articulated a detailed narrative based on clear factual allegations.

The characteristics of the phone numbers used to message Fridline do not alter this conclusion. First, the Court is unable to consider, nor has Defendant provided evidence to support, that these numbers "are private numbers connected to individual cell phones."[33] Even when considering the area codes of the numbers, Plaintiff has adequately connected the numbers to Defendant through the content of the messages. Fridline specifically averred that "[e]ach of the text messages contained" a link that "led to internet properties either owned by Interest Media or an affiliate offer promoted on Interest Media's platform." While the area codes are not associated

---

[30] Compl., Doc. 1 ¶¶ 26-27.

[31] *Id.* ¶¶ 28-31.

[32] *Smith*, 2020 WL 5632653, at *3.

[33] Brief in Support, Doc. 11 at 7. In making this observation, I agree with Interest Media that Plaintiff's arguments concerning "Sim Farms" improperly extends beyond the content of the Complaint. Brief in Opposition, Doc. 14 at 4. Further, I note that Defendant's argument that it "does not initiate calls or text messages to individuals" also seeks to extend the Court's review beyond the scope of the Complaint. Brief in Support, Doc. 11 at 7.

with Missouri, the content of the messages sufficiently connects them to Interest Media.

Finally, Defendant asserts that it does not use an automatic telephone dialing system ("ATDS") to send the messages. As Plaintiff has noted, he has not alleged that Defendant used an ATDS to send these messages. Because a claim under Title 47, United States Code, Section 227(c) does not require the use of an ATDS, I set aside this argument.

## V.    CONCLUSION

Plaintiff has adequately pled his one-count TCPA violation. In accordance with the above, **IT IS HEREBY ORDERED** that:

1.    Defendant Interest Media, Inc.'s Motion to Dismiss (Doc. 10) is **DENIED**;

2.    Defendant Interest Media, Inc.'s answer to the Complaint is due no later than May 12, 2025.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge