**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ZACHARY FRIDLINE,

    **Plaintiff**

vs.

INTEREST MEDIA, INC.,

    **Defendant**

:
:
:
:
:
:
:
:
:
:
:
:

**Case No. 4:24-cv-01770-MWB**
**Hon. Matthew W. Brann**

<u>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS**</u>

# TABLE OF CONTENTS

STATEMENT OF QUESTIONS INVOLVED ......................................................v

INTRODUCTION ..................................................................................1

FACTS ...............................................................................................2

LEGAL STANDARD..............................................................................5

ARGUMENT .......................................................................................7

   *1.   Mr. McDevitt Violated Rule 4.2* ....................................................7

      A.  Knowledge..............................................................................8

      B.  Subject of the Representation .....................................................9

      C.  Lack of Consent .....................................................................10

      D.  Aggravating Circumstances.......................................................10

   *2.   The Court Should Disqualify Mr. McDevitt and Wilson Elser* .....................13

   *3.   The Court Should Order Production of Relevant Work Product* .................16

   *4.   The Court Should Award Plaintiff His Fees and Costs* ...............................18

CONCLUSION.....................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1004 (N.D. Ill. 2014) ........................ 17, 18

*Hill v. St. Louis Univ.*, 123 F.3d 1114 (8th Cir. 1997) ........................................... 18

*In re Air Crash Disaster Near Roselawn, Ind.*, 909 F. Supp. 1116 (N.D. Ill. 1995) ...................................................................................................................... 12

*Inorganic Coatings, Inc. v. Falberg*, 926 F. Supp. 517 (E.D. Pa. 1995) ...... 5, 13, 17

*Moore v. Club Exploria, LLC*, No. 19-cv-2504, 2021 WL 260227 (N.D. Ill. Jan. 26, 2021) ..................................................................................................... *passim*

*Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080 (S.D.N.Y. 1989) ...................................................................................................................... 14

*Penda Corp. v. STK, LLC.*, No. CIV.A. 03-5578, 2004 WL 1628907 (E.D. Pa. July 16, 2004) ................................................................................................... 17, 18

*Taylor v. Cook Cnty. Sheriff's Off.*, No. 13-CV-1856, 2020 WL 1047053 (N.D. Ill. Mar. 4, 2020) ................................................................................................. 13

*United States v. Miller*, 624 F.2d 1198 (3d Cir. 1980) ........................................ 6, 16

*Univ. Pats., Inc. v. Kligman*, 737 F. Supp. 325 (E.D. Pa. 1990) ............................ 17

*Weeks v. Indep. Sch. Dist. No. I-89 of Oklahoma Cnty., OK., Bd. of Educ.*, 230 F.3d 1201 (10th Cir. 2000) ................................................................................ 13

*Weibrecht v. S. Illinois Transfer, Inc.*, 241 F.3d 875 (7th Cir. 2001) ....................... 9

**STATUTES AND REGULATIONS**

47 U.S.C. § 227 ......................................................................................................... 2

47 C.F.R. § 64.1200 ................................................................................................... 2

**RULES**

Pa. R. Prof. Conduct 3.7 ...................................................................................... 2, 15

Pa. R. Prof. Conduct 4.1(a) ..................................................................................... 12

Pa. R. Prof. Conduct 4.2.................................................................*passim*

Pa. R. Prof. Conduct 4.3 ....................................................................12

Pa. R. Prof. Conduct 8.4(c) ................................................................12

Local Rule 7.8(b)(2) ...........................................................................19

L.R. 83.23.2.........................................................................................6

## OTHER AUTHORITIES

ABA Model Rule 4.2 ............................................................................6

Pa. R. Prof. Conduct 3.7, cmts. 1, 2 .................................................15

Pa. R. Prof. Conduct 4.2, cmt. 1 .....................................................6, 7

Pa. R. Prof. Conduct 4.2, cmt. 8 ........................................................8

## STATEMENT OF QUESTIONS INVOLVED

1.      Whether Defendant's counsel violated Pennsylvania Rule of Professional Conduct 4.2, and other Rules of Professional Conduct, by calling Plaintiff's telephone number about a central disputed factual issue without Plaintiff's counsel's consent?

*Suggested answer*: Yes.

*Defendant's anticipated answer*: No.


2.      Whether sanctions should include disqualification or, at minimum, production of materials related to the contact, prohibition on use of information obtained, and fees and costs?

*Suggested answer*: Yes.

*Defendant's anticipated answer*: No.

**<u>INTRODUCTION</u>**

Plaintiff Zachary Fridline submits this Brief in Support of his Motion for Sanctions against Defendant's counsel, William F. McDevitt, Esq. and Wilson Elser Moskowitz Edelman & Dicker LLP ("Wilson Elser"), to address counsel's deliberate violation of this Court's Rules of Professional Conduct in directly communicating with Plaintiff regarding this action.

Mr. McDevitt, counsel of record for Defendant, knowingly placed a telephone call to Plaintiff's personal telephone number, *the same telephone number* on which Plaintiff received the calls that are the subject of this lawsuit. Mr. McDevitt placed the call from his *personal cellular telephone* rather than his law firm's telephone, thereby concealing his firm affiliation from any Caller ID lookup. He then left a voicemail in which he never identified himself as an attorney, never disclosed that he represented Defendant, and never revealed that the call concerned this litigation, while asking about the alleged association of an individual, unknown to Plaintiff, named Harold Kurtz, with Plaintiff's telephone number, and soliciting a return call directly to counsel's personal cell phone. The alleged association of Mr. Kurtz with the Subject Telephone Number is an issue that goes directly to Defendant's defense of this action.

Indeed, Mr. McDevitt did so a mere nine days before Plaintiff's scheduled deposition, where he could have properly inquired about any issues related to that

1

defense, and instead of meeting and conferring with Plaintiff's counsel regarding alleged deficiencies in the Plaintiff's discovery responses. This conduct is a blatant violation of Pennsylvania Rule of Professional Conduct 4.2 and merits sanctions. It is also conduct that another federal court has already sanctioned on materially analogous facts. *Moore v. Club Exploria, LLC*, No. 19-cv-2504, 2021 WL 260227 (N.D. Ill. Jan. 26, 2021). Worse still, because Mr. McDevitt admits that the purpose of his call was to develop evidence, he deliberately cast himself, Defendant's sole trial advocate, in the role of a fact witness on the central disputed issue in this case, conduct that independently implicates the advocate-witness rule. Pa. R. Prof. Conduct 3.7.

## **FACTS**

Plaintiff filed this action alleging that Defendant Interest Media, Inc. caused telemarketing calls to be placed to his telephone number, (570) XXX-XXXX (the "Subject Telephone Number"), in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and its implementing regulations, 47 C.F.R. § 64.1200. Plaintiff has identified the Subject Telephone Number as his number from the inception of this litigation, including in his pleadings, in email correspondences with opposing counsel, and in his discovery responses.

Defendant contends that an individual named Harold Kurtz is "associated" with the Subject Telephone Number. So, it asked about the Subject Telephone

2

Number in discovery. Apparently dissatisfied with the responses received, verified under the pains and penalties of perjury, and unable to wait the nine days to ask questions regarding the phone number in Mr. Fridline's deposition, Attorney McDevitt then undertook to begin his own investigation instead of doing what any other lawyer would do: meet and confer regarding any deficiency, seek discovery from some other source, or ask about it in a deposition.

Plaintiff's deposition was scheduled to proceed (and did proceed) on May 28, 2026. Rather than await that deposition, meet and confer with counsel, issue subpoenas, or move to compel on its discovery requests, Defendant's counsel resorted to self-help. On May 19, 2026, nine days before the deposition, Mr. McDevitt placed a call to the Subject Telephone Number from his personal cellular telephone, (267) 353-4292, rather than from any Wilson Elser firm line. The call was placed without the knowledge or consent of Plaintiff's counsel.

Mr. McDevitt left the following message on Plaintiff's voicemail:

> Yes, my name is Bill McDevitt and I'm calling for Harold Cutts. If Mr. Cutts is still at this line, or Mr. Kurtz, excuse me, if Mr. Kurtz is still at this line, if you could call me back at 267-353-4292. That is Bill McDevitt calling for Harold Kurtz. K-U-R-T-Z. Again, 267-353-4292. Thank you.

3

Nowhere in the voicemail[1] did Mr. McDevitt identify himself as an attorney. He did not disclose that he represents Defendant. He did not disclose that the call concerned this lawsuit. He instead held himself out as an anonymous member of the public looking for "Harold Kurtz," and invited the voicemail recipient to return the call directly to counsel's personal cell phone, an invitation which, if accepted, would have resulted in a live, unsupervised, *ex parte* conversation between Defendant's counsel and the represented Plaintiff about the central factual dispute in this case. Indeed, had Plaintiff not reached out to his counsel regarding this communication because it struck him as strange and suspicious, and counsel verified that the aforementioned impropriety occurred, this ethical violation would have likely evaded counsel's knowledge.

Upon learning of the call, Plaintiff's counsel immediately asked Mr. McDevitt to explain why he had called Plaintiff and left a voicemail in an email thread attached herein as Exhibit A. Mr. McDevitt admitted the contact and its purpose. He responded that he "called and left a message [for] Harold Kurtz, per a Google search indicating that Mr. Kurtz was the owner of a landline 570 [xxx xxxx]," and explained that because he had "requested billing and other information from [Plaintiff] in requests for production," to which "[o]bjections were made and

---

[1] Plaintiff would be glad to provide a copy of the voicemail file upon request by the Court but has not included it as an exhibit due to limitations with the ECF system with respect to audio file attachments.

4

nothing was produced," so he "followed up to resolve an apparent factual conflict." *Id.* In other words, Defendant's counsel *admits* that he deliberately placed the call to the Subject Telephone Number to *develop evidence* on the ownership of that number, the very issue Defendant has framed as central to its defense, and that he did so as an end-run around the discovery process after Plaintiff objected to Defendant's document requests.

Counsel's admission raises a further question: what, precisely, did Defendant's advocate expect his telephone call to prove? Even if, *arguendo*, Mr. Kurtz had answered the call, the only "evidence" thereby generated would have been Mr. McDevitt's own percipient observations, a "fact" provable in this litigation solely through the testimony of Defendant's counsel of record. There is no independent witness to counsel's investigation; there is only counsel. By his own admission, then, Mr. McDevitt did not merely contact a represented party. He set out to make himself a witness in his own client's case.

## LEGAL STANDARD

"Courts have vital interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients. To protect these vital interests, courts have the power to disqualify an attorney from representing a particular client." *Inorganic Coatings, Inc. v. Falberg*,

926 F. Supp. 517, 519 (E.D. Pa. 1995). A district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of the attorneys appearing before it. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). The Court likewise "possess[es] the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal," which includes "the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Moore*, 2021 WL 260227, at *11 (cleaned up).

Disqualification motions require a two-step analysis. The court first considers whether an ethical violation has actually occurred, and then whether disqualification is the appropriate remedy. *Id.* at *2. In this District, the applicable rules of professional conduct are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania. L.R. 83.23.2. Pennsylvania Rule of Professional Conduct 4.2, identical in all relevant respects to ABA Model Rule 4.2, provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

The Rule "contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the

6

uncounselled disclosure of information relating to the representation." Pa. R. Prof. Conduct 4.2, cmt. 1. A violation requires: (1) that the lawyer knew he was communicating with a represented person, (2) that the communication concerned the subject of the representation, and (3) that the lawyer lacked the consent of the person's counsel and was not otherwise authorized by law. *Moore*, 2021 WL 260227, at *4.

## ARGUMENT

### 1.  Mr. McDevitt Violated Rule 4.2

This Court need not write on a blank slate. In *Moore*, defense counsel in a TCPA class action, armed with a report suggesting that a third party named "Don Jorgensen," rather than the plaintiff, owned the subject telephone number, called the subject number to "test" that theory, concealed his identity, asked for "Don," and failed to identify himself as counsel. 2021 WL 260227, at *1-2. The court found a violation of Rule 4.2 and sanctioned counsel's firm, ordering it to pay the plaintiff's fees and costs. *Id.* at *11-12. Plaintiff's counsel provided the *Moore* decision to Mr. McDevitt on May 19, 2026, the same day as the improper contact. Each element of a Rule 4.2 violation found in *Moore* is present here, and several aggravating circumstances are present here that were absent there.

## A.    Knowledge

A lawyer's actual knowledge that he is communicating with a represented person "may be inferred from the circumstances," and a "lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." Pa. R. Prof. Conduct 4.2, cmt. 8; *Moore*, 2021 WL 260227, at *4. In *Moore*, the court held that counsel "knew, prior to initiating the call, that there was a significant risk" the represented plaintiff would receive the call, because counsel "did not just call any phone number disclosed in discovery, he called the subject phone number at the heart of this lawsuit," a number the plaintiff had "repeatedly identified . . . as belonging to him" throughout the litigation. *Id.* at *5.

Precisely the same is true here. Plaintiff's entire case is premised on calls placed to the Subject Telephone Number. Plaintiff has identified the number as his own in his pleadings and sworn discovery responses and Defendant itself has sought Plaintiff's billing records for that very number in discovery. Mr. McDevitt's own email confirms that he was fully aware that ownership of the number was Plaintiff's "claim" in this case: that is the "apparent factual conflict" he says he set out to "resolve." Counsel cannot dial the central phone number in a TCPA case, a number he knows the represented plaintiff claims as his own and then profess surprise that he reached the plaintiff, let alone make the callback request here.

That is the very definition of closing one's eyes to the obvious.

8

Nor does it matter that the contact took the form of a voicemail rather than a live conversation. Leaving a message for a represented person is itself a prohibited communication. In *Weibrecht v. S. Illinois Transfer, Inc.*, 241 F.3d 875, 878 (7th Cir. 2001), the Seventh Circuit affirmed a finding that an attorney violated the anti-contact rule merely by leaving a message with a represented person on the eve of his deposition, even though the attorney claimed the only purpose of the call was scheduling. *See also Moore*, 2021 WL 260227, at *3 (collecting authority that a violation "can occur even in brief and insignificant encounters with a represented party"). Here, the voicemail was worse than mere scheduling. It was a substantive evidence-gathering communication about a central disputed fact in the case, coupled with a solicitation that the recipient call Defendant's counsel back directly, without his own counsel, on counsel's personal cell phone.

## B.    Subject of the Representation

The communication concerned the subject of the representation. By Mr. McDevitt's own admission, he placed the call to investigate whether Harold Kurtz, rather than Plaintiff, owns the Subject Telephone Number, and to "resolve" a "factual conflict" bearing on Defendant's discovery requests and its defense of this action. He was not calling about some unrelated matter. He had no prior relationship with Plaintiff or with Mr. Kurtz, and the only conceivable reason for the call was this lawsuit. In *Moore,* the court rejected the identical defense, that

9

counsel "did not discuss the case,"  because counsel "called the subject phone number to advance its investigation in this TCPA lawsuit" regarding the third party's alleged connection to the number, an issue the defendant itself characterized as the potential "death knell" of the plaintiff's claims. 2021 WL 260227, at *2, *7. And the court held that "Rule 4.2's proscription is not limited to lengthy interrogations by attorneys. There is no escape clause for attorneys who speak to represented parties about the subject matter of the representation where the contact is brief and nothing pertinent is discovered." *Id.* The same reasoning controls here, since Rule 4.2 prohibits the communication attempt itself.

### C.    Lack of Consent

There is no dispute on the third element. Mr. McDevitt did not have the consent of Plaintiff's counsel to contact Plaintiff, was not authorized by law or court order to do so and did not notify Plaintiff's counsel of the contact after the fact. To the contrary, Plaintiff's counsel learned of the contact only because Plaintiff reported the voicemail to his counsel because it struck him as peculiar. As in *Moore*, it appears counsel "hoped the phone call would be forgotten or go unnoticed." 2021 WL 260227, at *8.

### D.    Aggravating Circumstances

Several features of this contact make it more egregious than the conduct sanctioned in *Moore*. *First*, the offending attorney in *Moore* was not counsel of

record. *Id.* at \*8. Mr. McDevitt is Defendant's counsel of record in this case, bound by this Court's rules, and on direct notice of Plaintiff's representation by virtue of his own appearance. *Second*, Mr. McDevitt placed the call from his personal cellular telephone rather than his firm line, suppressing any association between the call and Wilson Elser, the functional equivalent of the caller ID concealment that troubled the *Moore* court. *Third*, Mr. McDevitt did not merely place a call, he left a recorded message holding himself out as an ordinary member of the public and solicited the recipient to call him back directly, inviting a further and more extensive *ex parte* communication. *Fourth*, Mr. McDevitt admits the contact was a response to Plaintiff's discovery objections and an attempt to obtain through prohibited self-help what Defendant had not obtained (and had not moved to compel) through the Federal Rules. *Fifth*, the contact occurred nine days before Plaintiff's scheduled deposition, where any legitimate question about the ownership of the Subject Telephone Number could have been posed on the record, with counsel present. *Sixth*, by acting as his own investigator, Mr. McDevitt guaranteed that any "evidence" his call produced could be established only through his own testimony, entangling his role as Defendant's advocate with that of a witness, a problem that did not arise in *Moore*, where the offending attorney was not counsel of record.

11

An attorney confronted with ambiguity under Rule 4.2 "must take a conservative rather than aggressive approach" and must either follow the more restrictive interpretation of the Rule, contact opposing counsel, or seek guidance from the Court. *Moore*, 2021 WL 260227, at *4 (quoting *In re Air Crash Disaster Near Roselawn, Ind.*, 909 F. Supp. 1116, 1122-23 (N.D. Ill. 1995)). Mr. McDevitt did none of these things, despite three readily available lawful avenues: a meet and confer, followed by an appropriate motion to compel, a subpoena to the Plaintiff's phone carrier, or simply waiting nine days for the deposition, each of which would have produced admissible evidence from a proper source, rather than the uncorroborated say-so of Defendant's own advocate.

Finally, holding oneself out as a disinterested member of the public while gathering evidence from a represented adverse party implicates not only Rule 4.2 but also counsel's independent duties of candor. *See* Pa. R. Prof. Conduct 4.1(a) (prohibiting false statements of material fact to third persons); Pa. R. Prof. Conduct 4.3 (duties in dealing with unrepresented persons); Pa. R. Prof. Conduct 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation); *Moore*, 2021 WL 260227, at *8 n.2 (noting that counsel's failure to disclose his role implicated Rule 4.1 independent of Rule 4.2).

12

### 2.  The Court Should Disqualify Mr. McDevitt and Wilson Elser

In ruling on a motion to disqualify, courts balance the privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice. *See Moore*, 2021 WL 260227, at *10 n.5 (N.D. Ill. Jan. 26, 2021). Here, Defendant's counsel of record deliberately intruded into the attorney-client relationship between Plaintiff and his attorneys, attempting to elicit evidence from Plaintiff over the phone, in disguise, without his counsel's knowledge, for use in Defendant's defense of this action.

Numerous courts have disqualified counsel for violations of Rule 4.2 in similar circumstances. In *Inorganic Coatings*, 926 F. Supp. at 518-21, the court disqualified counsel for a telephone conversation with the opposing party even though the represented party initiated the call to discuss settlement. Counsel here chose to initiate the communication for the admitted purpose of developing evidence against the represented party. In *Weeks v. Indep. Sch. Dist. No. I-89 of Oklahoma Cnty., OK., Bd. of Educ.*, 230 F.3d 1201, 1204-05, 1208 (10th Cir. 2000), the Tenth Circuit affirmed disqualification of counsel who communicated *ex parte* with employees of the opposing party about the subject of the case. In *Taylor v. Cook Cnty. Sheriff's Off.*, No. 13-CV-1856, 2020 WL 1047053, at *3 (N.D. Ill. Mar. 4, 2020), the court disqualified a firm whose attorney (Ms. Kurtz)

13

communicated with a represented party's former employee about the subject of the suit. And in *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1085 (S.D.N.Y. 1989), the court disqualified a firm despite its having spent nearly 7,500 hours on the case.

Plaintiff acknowledges that the *Moore* court ultimately declined to disqualify counsel, finding the violation there mitigated by its brevity, the absence of intentional bad faith, and the lack of prejudice. 2021 WL 260227, at *8-10. However, Plaintiff submits that the aggravating circumstances catalogued above, including Mr. McDevitt's status as counsel of record, his use of a personal cell phone to conceal firm affiliation, the affirmative solicitation of a callback, the admitted circumvention of the discovery process, his attempt to shoehorn himself as both an advocate and witness in this matter, and the imminence of Plaintiff's deposition, all distinguish this case and warrant the stronger remedy.

Moreover, unlike in *Moore*, Mr. McDevitt acted with the benefit of directly on-point authority condemning exactly this conduct in exactly the same type of case. A lawyer who replicates conduct that has already been held sanctionable, with the same excuse, cannot claim to have wandered innocently over an unmarked line. The lines were not merely visible here. They had been painted in a well-known opinion arising from a nearly identical pretext call in the TCPA context.

14

Disqualification is independently supported by the advocate-witness rule. Pennsylvania Rule of Professional Conduct 3.7(a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," subject to narrow exceptions inapplicable here. The rule exists because "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client," and because the tribunal "may be confused or misled by a lawyer serving as both advocate and witness." Pa. R. Prof. Conduct 3.7, cmts. 1, 2.

Mr. McDevitt has, by his own admission, placed himself squarely within the Rule's concern. He chose to conduct a personal undisclosed field investigation of a central factual dispute in this case, who owns and controls the Subject Telephone Number, rather than develop that evidence through a carrier subpoena, a motion to compel, or Plaintiff's imminent deposition. Having made that choice, he is now the *sole percipient witness* to his investigation, to the placement of the May 19, 2026 call, to the contents of his voicemail, and to whatever his "Google search" purportedly showed. If Defendant ever intends to make anything of that investigation, the proof can come only from Mr. McDevitt's own mouth, and Mr. McDevitt is equally a necessary witness on this Motion itself.

This self-inflicted entanglement distinguishes this case from *Moore* in yet another respect. The offending attorney there was not counsel of record and never

15

appeared in the case, 2021 WL 260227, at *8, so the advocate-witness problem

was not implicated. Here, Defendant's counsel of record *deliberately* manufactured

a situation in which he is at once the advocate who will try this case and the

witness to his own evidence gathering. A lawyer cannot vouch for his own

investigation from behind counsel table, and a represented party should not face

cross-examination, formal or, as here, informal and disguised, conducted by a

witness. At minimum, Rule 3.7 independently bars Mr. McDevitt from continuing

as Defendant's trial advocate. Taken together with the Rule 4.2 violation and the

deception by which the "evidence" was sought, it confirms that disqualification,

not a fee award alone, is the proportionate remedy here.

Nor would disqualification unduly prejudice Defendant. Discovery remains

ongoing, and Defendant can readily retain successor counsel who will respect this

Court's Rules of Professional Conduct. The prerogative of a party to proceed with

chosen counsel, while real, must yield where counsel has deliberately

compromised the integrity of the proceedings. *Miller*, 624 F.2d at 1200.

### 3. The Court Should Order Production of Relevant Work Product

As an additional sanction, Plaintiff requests that the Court order Mr.

McDevitt and Wilson Elser to produce all of their work product concerning Harold

Kurtz's alleged use or ownership of the Subject Telephone Number, including all

16

notes, memoranda, recordings, and research related to or generated as a result of the May 19, 2026 contact.

"Courts have fashioned various remedies for violations of Rule 4.2," including "requiring the production of all work product related to or generated as a result of the prohibited contact." *Penda Corp. v. STK, LLC.*, No. CIV.A. 03-5578, 2004 WL 1628907, at *7 (E.D. Pa. July 16, 2004) (citing *Univ. Pats., Inc. v. Kligman*, 737 F. Supp. 325, 328 (E.D. Pa. 1990)). The *Inorganic Coatings* court, in addition to disqualifying counsel, ordered production of "all notes and memoranda related to the *ex parte* contact." 926 F. Supp. at 521. Similarly, in *Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1004, 1019 (N.D. Ill. 2014), the court ordered offending counsel to produce all notes, memoranda, and recordings relating to the improper communications. Production is equitable here because it "alleviates an unfair advantage gained by the prohibited Rule 4.2 communication" and permits Plaintiff's counsel to police any downstream use of the improperly obtained information. *Moore*, 2021 WL 260227, at *10-11. At minimum, the Court should order production of any notes, memoranda, or records of the May 19, 2026 call and the research that prompted it, and should prohibit Defendant from making any use in this litigation of information obtained as a result of the contact. *Id.*

17

### 4. The Court Should Award Plaintiff His Fees and Costs

Finally, at an irreducible minimum, the Court should award Plaintiff the reasonable attorneys' fees and costs associated with this Motion, the precise remedy imposed in *Moore* itself. 2021 WL 260227, at *11-12 ("the Court imposes and orders the Katten law firm to pay the reasonable attorneys' fees and costs associated with Moore's motion for sanctions"); *see also Penda Corp.*, 2004 WL 1628907, at *7 (citing cases, including *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1121 (8th Cir. 1997)); *Goswami*, 8 F. Supp. 3d at 1019 (awarding fees for Rule 4.2 violation). Plaintiff should not bear the expense of policing defense counsel's compliance with the most basic rule of professional conduct governing contact with represented parties, particularly where counsel was handed directly on-point persuasive authority on the day of his misconduct and forced this motion anyway.

### CONCLUSION

Plaintiff respectfully requests that the Court enter an Order (1) disqualifying William F. McDevitt and Wilson Elser Moskowitz Edelman & Dicker LLP from representing Defendant in this action, (2) requiring Mr. McDevitt and Wilson Elser to produce all work product concerning Harold Kurtz's alleged use or ownership of the Subject Telephone Number, including all materials related to or generated as a result of the May 19, 2026 contact, (3) prohibiting Defendant from making any use

18

of information obtained as a result of the improper contact, and (4) awarding

Plaintiff the reasonable attorneys' fees and costs associated with this Motion.

RESPECTFULLY SUBMITTED AND DATED this June 10, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains

4,383 words.

DATED this June 10, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that, on June 10, 2026, I served the foregoing on all

interested parties in this action by transmitting such document(s) electronically via

CM/ECF, which will automatically notify each attorney who has entered their

appearance.

Dated: June 10, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.