2021 WL 260227

2021 WL 260227
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

George MOORE on behalf of himself
and others similarly situated, Plaintiff,

v.

CLUB EXPLORIA, LLC, Defendant.

Case No. 19-cv-2504
|
Signed 01/26/2021

**Attorneys and Law Firms**

Keith James Keogh, Timothy J. Sostrin, Keogh Law, Ltd., Chicago, IL, Anthony Paronich, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Cory William Eichhorn, Pro Hac Vice, Holland & Knight LLP, Miami, FL, Michael A. Grill, Tammy Tabush, Holland and Knight, LLP, Carrie Melissa Stickel, Charles Allan DeVore, Katten Muchin Rosenman LLP, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

Sunil R. Harjani, United States Magistrate Judge

**\*1** Currently before the Court is Plaintiff's Opposed Motion for Sanctions [107]. Plaintiff's motion presents questions regarding the ethical implications of a phone call between counsel for Defendant Club Exploria, LLC and Plaintiff George Moore. For the reasons stated below, the Court finds a violation of ABA Model Rule 4.2 (the anti-contact rule) and orders Defendant's counsel Katten Muchin Rosenman LLP to pay the attorneys' fees and costs associated with this motion to Plaintiff. Accordingly, Plaintiff's motion is granted in part and denied in part.

## Background

In this putative class action, Plaintiff George Moore alleges that Defendant Club Exploria LLC violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by causing telemarketing phone calls to be placed to Moore's telephone without his consent. Doc. [55]. Club Exploria asserts that it contracted with a vendor to place TCPA-compliant calls only, and that the sub-vendor who placed the phone calls at issue apparently had consent from an individual named Donald Jorgensen to call the subject number. *See* Doc. [111] at 3.

According to Club Exploria, its investigation in this case revealed that Donald Jorgensen and Patricia Jorgenson were associated with Moore's phone number as recently as September 2020. Doc. [121] at 1. As a result, J. David Washburn, an attorney at the law firm of Katten Muchin Rosenman LLP, counsel for Club Exploria, called Moore's alleged phone number to test the research indicating that Donald Jorgensen, and not Moore, would answer the call. Doc. [111] at 3-4.

Moore ultimately picked up the phone on October 27, 2020. Moore states that the telephone call went as follows:

- At approximately 12:12 p.m., Moore received a call from a "Private number."

- Moore answered, and a man indicated he was trying to reach someone named "Don." Moore informed the caller that there was no one named "Don" at the number and asked who was calling. The caller responded, "David Washburn."

- Moore asked Washburn if "Don" had provided the number to Washburn recently, and Washburn responded affirmatively.

- Moore told Washburn that the phone number had been assigned to Moore for nearly 20 years. Washburn asked who he was speaking with, and Moore identified himself as George Moore.

- Moore asked Washburn what company he is with and Washburn responded that he was not with any company and was just "an individual."

- Moore asked Washburn again if Don had provided the number to him recently, and Washburn responded affirmatively again. The call concluded shortly thereafter.

Doc. [107-4] ¶¶ 9-21. After the call, Moore performed a caller ID lookup for the number and learned the name associated with the number was "J David Washburn," an attorney at Katten. Doc. [107-3] at 2. Moore informed his counsel, who

later emailed counsel for Club Exploria to inquire about the phone call. *Id.*

In the responding email, counsel for Club Exploria gave the following account of the October 27, 2020 phone call:

> We got an expert report on the 27th indicating the number on which your client claims he got calls is owned by or used by another individual named Don. David called the number and apparently your client answered. David asked for Don and your client responded that he is not Don. Your client asked who was calling and David truthfully gave his name. David said the number is supposed to be for Don and your client stated it is his number and his name is not Don. He identified himself and David apologized and said good bye. David did not ask him questions and certainly did not discuss the case. He was merely trying to verify the report we received that the number is associated with Don, not your client.

**\*2** Doc. [107-3] at 2. At a hearing with the Court on January 6, 2021, counsel for Club Exploria represented that while Moore's recitation of the call was accurate, Washburn could not remember all of the specifics of the phone call. Doc. [122] at 3. Counsel further stated that because Club Exploria did not have affirmative evidence to refute Moore's recollection of the phone call, Club Exploria has accepted Moore's version for purposes of the sanctions motion. *Id.*

**Discussion**

Moore has moved for sanctions in light of the October 27, 2020 phone call. Doc. [107]. Moore asserts that the phone call violated ABA Model Rule 4.2, the so-called "anti-contact" rule, and requests that the Court consequently: (1) disqualify Katten from representing Club Exploria in this action; and (2) order Katten to produce "all of its work product concerning Don Jorgensen's alleged use or ownership of the Subject Telephone Number." *Id.* at 2. Club Exploria responds that Washburn's brief phone call did not violate Rule 4.2 and that disqualification and work product production are inappropriate remedies, as Moore suffered no prejudice as a result of the phone call. Doc. [111].

The Court finds, for the reasons discussed below, that Washburn violated Rule 4.2. While his phone call with Moore was brief, Washburn purposefully called a number that was repeatedly disclosed in this litigation as Moore's phone number, without the consent of Moore's counsel. Then,

even after Moore identified himself on the call, Washburn continued the conversation and made misstatements about who he was and about Donald Jorgensen, a figure central to Club Exploria's theory of the case. That being said, disqualification and the production of attorney work product is too severe a sanction here. The Court finds that the lesser sanction of an award of the fees and costs associated with this motion is the appropriate remedy.

**I. An Ethical Violation Occurred on October 27, 2020**

Because Moore has moved to disqualify Katten from representing Club Exploria, the Court must undergo a two-part analysis. *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). First, the Court must consider "whether an ethical violation has actually occurred [.]" *Id.* Then, if an ethical violation has taken place, the Court must second determine "if disqualification is the appropriate remedy." *Id.* To answer the first question, Local Rule 83.50 instructs that the American Bar Association's Model Rules of Professional Conduct provide the applicable ethical rules for attorneys in the Northern District of Illinois.[1] N.D. Ill. L.R. 83.50.

Moore alleges here that Washburn violated the ABA's "anti-contact" rule, Rule 4.2. Doc. [107] at 5. That rule provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

**\*3** Model R. Prof. Conduct 4.2 (ABA 2020). At least four policy goals underpin Rule 4.2, including: (1) "to prevent attorneys from exploiting the disparity in legal skills between the attorney and lay people"; (2) "to preserve the integrity of the attorney-client relationship"; (3) "to prevent inadvertent disclosure of privileged information"; and (4) "to facilitate settlement by channeling disputes through lawyers accustomed to the negotiation process." *Kole v. Loyola Univ. of Chicago*, No. 95 C 1223, 1997 WL 47454, at \*4 (N.D. Ill. Jan. 30, 1997) (citing *Polycast Technology v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990)).

Courts in the Seventh Circuit have recognized that a Rule 4.2 violation can occur even in brief and insignificant encounters with a represented party. In *Weibrecht v. S. Illinois Transfer, Inc.*, a Federal Employers' Liability Act (FELA) case, the defendant corporation alleged that one of its employees was improperly contacted on at least two occasions in contravention of the anti-contact rule. 241 F.3d 875, 878

Moore v. Club Exploria, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 260227

Case 4:24-cv-01770-MWB    Document 32-1    Filed 06/10/26    Page 3 of 21

(7th Cir. 2001), *as amended on denial of reh'g* (Mar. 27, 2001). The first time occurred when the plaintiff, purportedly at his attorney's behest, contacted the employee before his deposition to discuss a case theory and request that the employee contact the plaintiff's counsel. *Id.* at 877-78. The second time occurred when the lawyer left a message with the employee, asking the employee to call the attorney back. *Id.* at 878. The lawyer insisted that "the only purpose of his call was to make sure [the employee] was aware that the time of the deposition had been changed." *Id.* While there was a dispute over whether the plaintiff's contact with the employee was at the attorney's behest, it was undisputed that the attorney left a message with the employee on the eve of his deposition. *Id.* The district court held that the attorney's message violated the anti-contact rule, and the Seventh Circuit agreed. *Id.* at 883.

More recently in *Mullen v. GLV, Inc.*, an attorney was found to have violated Rule 4.2 by sending a short reply email to a class member after class certification had taken place. 334 F.R.D. 656 (N.D. Ill. 2020), *reconsideration denied*, No. 18 C 1465, 2020 WL 5630454 (N.D. Ill. Sept. 20, 2020). The *Mullen* case entailed a class action brought against a youth volleyball training business, wherein a parent asserted that the business concealed one owner's history of sexual abuse of underage girls. *Id.* at 658. Following class certification, there was a significant amount of email traffic among class members, the owner of the defendant volleyball company, and the vice president of the company regarding opting out of the class. *Id.* at 659-61. In one instance, two class members sent a mass email to several other class members with details about opting out. *Id.* at 660. One recipient of the email forwarded the correspondence to the vice president and owner of the company, writing that several people had responded asking to be "removed from the list." *Id.* That forward, was then, in turn, forwarded to counsel for the defendant. *Id.* The attorney responded directly to the class member who sent the "removed from the list" message and requested the names of the parents who wanted to be removed from the email list. *Id.* The *Mullen* Court found that defense counsel's short response violated Rule 4.2, even though she did not initiate the contact, and even though the communication was not coercive. *Id.* at 664-65.

 **\*4**  Cases in this jurisdiction further guide an attorney to take a conservative, rather than aggressive approach, when interacting with ambiguities in the anti-contact rule. In a commercial airline crash disaster action, for example, plaintiffs' lawyers were sanctioned for commissioning a questionnaire sent to pilots employed by one of the defendant

airline companies. *In re Air Crash Disaster Near Roselawn, Indiana on Oct. 31, 1994*, 909 F. Supp. 1116 (N.D. Ill. 1995). The attorneys there argued that, because it was difficult to discern whether the pilot recipients of the survey constituted represented persons by virtue of their employment, their good faith conduct was excusable. *Id.* at 1120, 1122-23. The court disagreed. *Id.* at 1121-23. Although the court acknowledged the difficulty in discerning which employees constitute represented persons in the corporate context, the court found that the interpretive challenge called for caution rather than boldness:

> Since an employee could potentially bind the corporation pursuant to Fed.R.Evid. 801(d)(2)(D), it is fair to require that the employer's attorney be present. Nevertheless, this Court recognizes that it may be difficult to determine which employees fit into the category prior to attempting discovery. This difficulty, however, does not justify an aggressive approach that results in ethical violations. Instead, counsel, when confronted with a need to obtain information from witnesses that might reasonably lead to ethical problems, must take a conservative rather than aggressive approach. The "chalk lines" drawn by the ethical rules are meant to be avoided at all costs. The goals should not be to come so close to the "chalk lines" that one is covered in white dust. The goal must be to operate at all times well within the ethical "chalk lines" drawn by our ethical rules.

*Id.* at 1122. The court further held that when Rule 4.2 might be an issue, counsel must either: "(1) follow the more restrictive interpretation of the Rule; (2) contact opposing counsel; or (3) seek guidance from the Court." *Id.* at 1123; *Stearns v. Navigant Consulting, Inc.*, 89 F. Supp. 2d 1014, 1016 (N.D. Ill. 2000) (citation omitted). In short, "[p]rudence dictates avoiding even the remote appearance of impropriety," *Stearns*, 89 F. Supp. 2d at 1016, and the onus is on the attorney to dodge improper contacts with represented persons.

With that legal backdrop in mind, the Court turns to analyzing whether Washburn's brief phone call with Moore violated Rule 4.2. Specifically, the Court looks at the following three elements of the Rule: (1) whether the attorney knew that the attorney was communicating with a person represented by another lawyer; (2) whether the communication was about the subject of representation; and (3) whether the attorney had the consent of the person's lawyer or was otherwise authorized by law to engage in the communication.

### A. Knowledge

Washburn's knowledge regarding who was on the other end of the line on October 27, 2020 is central to the Rule 4.2 analysis. As Comment 8 to Rule 4.2 makes clear, "[t]he prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation[.]" MRPC 4.2 cmt. 8. However, that same comment provides that "actual knowledge may be inferred from the circumstances," and that "the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." *Id.*

Here, the record shows that Washburn had reason to believe that an individual other than Moore could have had access to the subject phone number. Club Exploria possessed documents linking Donald Jorgensen and Patricia Jorgensen to the same phone number that Moore identified as his number in discovery responses. *See* Doc. [121-1]. Significantly, some of the connections to the Jorgensens were recent, with one record linking them to the subject phone number as late as September 2020. *Id.* In addition, Washburn began the phone call by asking for "Don," which indicates, at the very least, that he thought there was a chance that Donald Jorgensen could have answered the call. Doc. [107-4] ¶ 11. As a result, the Court cannot find that Washburn had actual knowledge at the outset that he was communicating with a represented person.

**\*5** However, the facts also demonstrate that there were plenty of warning signs that Moore could answer the call on October 27, 2020. Washburn did not just call any phone number disclosed in discovery, he called *the* subject phone number at the heart of this lawsuit; Moore's entire case is based on his claim that Club Exploria violated the TCPA by causing telemarketing phone calls to be placed to the subject phone number without his consent. Doc. [55]. Moreover, Moore has repeatedly identified the subject phone number as belonging to him and being under his control throughout the litigation. In addition, Moore produced phone records tied to the subject phone number, exhibiting his control over the subject phone number. Doc. [107-4] ¶ 6. Even in one of Club Exploria's *own* records in support of its Donald Jorgensen theory, Moore is listed as an individual connected to the subject phone number. Doc. [121-1] at 2. From these circumstances, the Court infers that Washburn knew, prior to initiating the call, that there was a significant risk that Moore would answer a call placed to the subject phone number. Washburn therefore initiated the phone call with an aggressive, rather than conservative approach. *See In re Air Crash*, 909 F. Supp. at 1122.

Club Exploria asserts that it is "clear from the fact that Mr. Washburn began the call by asking for Don," that Washburn "did not intentionally call Plaintiff." Doc. [111] at 7. Club Exploria additionally highlights the fact that Moore faults Washburn for knowingly calling the subject phone number, rather than knowingly calling Plaintiff. *Id.* As an initial matter, the Court disagrees that the mere fact that Washburn asked for Don meant that Washburn was intentionally calling Jorgensen, as opposed to Moore. Washburn could have just as easily been calling to see if Jorgensen or Moore would pick up—a more credible explanation—or to find out more information about Don's connections to the subject phone number. At any rate, a Rule 4.2 violation takes place if an attorney knowingly communicates with a represented person, and Washburn was not allowed to avoid the scope of the anti-contact rule "by closing [his] eyes to circumstances that make it obvious that the person to be communicated with is represented in the matter in question." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003) (quoting ABA Formal Op. 95–396 (1995)). In this case, the circumstances made it obvious that Moore was connected to the subject phone number, and Washburn could not close his eyes to those circumstances when making a phone call to the subject phone number.

Furthermore, Washburn's knowledge, for purposes of Rule 4.2, is not limited to what he knew before placing the phone call to the subject number. Once Washburn placed the call, he asked for Don and was told that there was no one named Don at the number. Doc. [107-4] ¶¶ 11-12. That, alone, raised another warning flag that Moore could have been the other person on the line. Washburn nevertheless continued the call, and when he was asked who he was, he provided his name but failed to identify himself as counsel for Club Exploria. *Id.* ¶¶ 12-13. Moore asked Washburn if Don had provided the number to him recently, and Washburn responded affirmatively. *Id.* ¶ 15. This, of course, was not true. Moore then told Washburn that the number had been assigned to him for roughly 20 years, an answer largely consistent with Moore's discovery responses, and yet another signal that Moore was the individual on the line. *Id.* ¶ 16. Finally, Washburn asked who was on the line, and Moore identified himself. *Id.* ¶ 17.

Actual knowledge becomes crystal clear at this point. Once Moore identified himself, Washburn clearly had knowledge

that he was speaking with a represented person. At this point, the call should have immediately terminated. *See* MRPC 4.2 cmt. 3 (if "after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule," Rule 4.2 requires the lawyer to "immediately terminate communication."). Yet, the call continued. Moore asked Washburn what company he was with, at which point Washburn stated that he was not with any company, and was just "an individual." Doc. [107-4] ¶¶ 18-19. Moore asked again whether Don had provided Washburn with the number recently, and Washburn said yes. *Id.* ¶¶ 20-21. Both of these statements are misleading, but more on that later. More importantly, only at this point did the call end. Thus, even if Washburn did not have actual knowledge before the call that he would be speaking with Moore, the circumstances of the call show that he gained that knowledge over the course of the call and continued to speak with Moore.

**\*6** Club Exploria cites to *Robinson v. Chefs' Warehouse Inc.*, a distinguishable case from the Eastern District of California, in support of its claim that Washburn's contact with Moore was unknowing. *See* Doc. [111] at 8. In *Robinson*, a class action alleging wage and hour violations, as well as various discrimination claims, the defendant's law firm hired contract attorneys to contact putative class members in order to settle their individual claims and reduce the size of the potential class. *Robinson v. Chefs' Warehouse, Inc.*, No. 315CV05421RSKAW, 2019 WL 3220288, at \*4 (N.D. Cal. July 17, 2019). The contract attorneys were provided a spreadsheet call list with approximately 100 former employees of the defendant that the contract attorneys could edit together in real time, as well as a script on what to say to the putative class members. *Id.* at \*1. A named plaintiff was listed but originally had a "do not call" designation next to his name. *Id.* at \*2. One contract attorney working on the call list, named Gonzales, edited the spreadsheet and accidentally removed the "do not call" note next to the named plaintiff's entry. *Id.* Gonzales subsequently called the named plaintiff and discussed settlement. *Id.* When Gonzales was informed by a supervisor that the named plaintiff was a represented person in the litigation, Gonzales discontinued contact with the plaintiff and informed him that he could not have further discussions with him. *Id.* The court found that Gonzales did not violate Rule 4.2 because he was a contract attorney who "was not aware that Prado was represented, let alone a named plaintiff." *Id.* at \*4.

Club Exploria likens Washburn's conduct to Gonzales's inadvertent contacts, but the facts are starkly different here. Simply put, Gonzales accidentally called a named plaintiff due to a formatting error in a spreadsheet, but Washburn's contact was no accident. Washburn purposefully called the central phone number in a TCPA class action lawsuit, a number known to be connected to the named plaintiff. Washburn, a partner at Katten, was also far more sophisticated than the contract attorney in Gonzales. What's more is that Gonzales identified himself as counsel during the communications, *id.* at \*2, whereas Washburn failed to identify himself as an attorney for Club Exploria and acted as if he were a disinterested person. Finally, Washburn had actual knowledge that he was speaking with a represented person once Moore identified himself but continued the conversation by answering two more questions. *Robinson* is therefore inapposite.

The Court also is troubled by the fact that Moore made two misleading representations during the call when he had actual knowledge that he was speaking to a represented party. Washburn was not just an "individual," he was a partner at Katten and counsel for Club Exploria. Washburn also did not receive the phone number for Jorgensen – he received it from a report that was done to investigate the phone number.[2] The Court will note that Washburn's misleading responses also allow the inference that Washburn was aware that he was now talking to a represented person, and had thus crossed the ethical line. Accordingly, the Court finds that Washburn had actual knowledge for purposes of Rule 4.2.

### B. Subject of the Representation

Rule 4.2 prohibits an attorney from speaking with a represented person regarding the "subject of the representation." Comment 4 clarifies that the rule does not prohibit communications "concerning matters outside the representation." MRPC 4.2 cmt. 4. In a formal opinion, the ABA clarified that the anti-contact rule "does not bar communications on other, unrelated matters." ABA Formal Op. 95–396 (1995). The opinion provided the example of a lawyer who represents a defendant on a charge relating to a crime, "Crime A." *Id.* Rule 4.2 would prevent another lawyer, such as a prosecutor or counsel for a co-defendant, from talking to the client about Crime A without consent of the lawyer. *Id.* However, if the communicating lawyer represents a client with respect to a separate crime, "Crime B," Rule 4.2 would not bar discussion with the represented person about that separate crime. *Id.* Thus, the ABA comment and formal

opinion illustrate that a lawyer can have discussions with a represented person related to a separate matter, that is a matter that is distinct from the one for which the represented person has retained counsel.

**\*7** In this case, although the phone call was short-lived, the discussion did involve the subject of the representation. By Club Exploria's own admission, Washburn called the subject phone number to advance its investigation in this TCPA lawsuit regarding Don Jorgensen's connections with the subject phone number. *See* Doc. [107-3] at 2; Doc. [111] at 3-4. Washburn was not calling to discuss a separate lawsuit or transaction, and Club Exploria does not claim that Washburn dialed the subject phone number to discuss a discrete matter. Nor did Washburn or Jorgensen or Moore have any prior relationship such that they would be calling each other. Club Exploria nevertheless insists that, "[a]t no point did Mr. Washburn and Plaintiff discuss the case, the phone calls at issue in the case, or any other topic at issue in this case." Doc. [111] at 4. Yet in the same breath, Club Exploria characterizes the "complications around ownership of the Subject Phone Number" as the potential "death knell" to Moore's individual claims. *Id.* at 2. Indeed, evidence indicating that Don Jorgensen (who Club Exploria claims provided consent for telemarketing calls) controlled the subject phone number supports Club Exploria's third affirmative defense in this litigation. Doc. [62] at 17. As a result, the short phone conversation encompassing remarks about Don Jorgensen, Moore's ownership of the phone for almost 20 years, and Jorgensen having provided Washburn with the subject phone number did involve the TCPA lawsuit, the subject of representation in this case.

Club Exploria stresses the fact that Moore did most of the talking in the conversation, and that other than asking who Moore was, Washburn "posed no other questions and answered a few other brief questions posed by the Plaintiff." Doc. [111] at 4. Certainly, the phone call would have been more egregious had Washburn called and questioned Moore at length regarding the subject phone ownership issues. However, Rule 4.2's proscription is not limited to lengthy interrogations by attorneys. There is no escape clause for attorneys who speak to represented parties about the subject matter of the representation where the contact is brief and nothing pertinent is discovered. That is merely fortuitous— the Rule accounts for the potential, by the very contact, that a represented party could disclose information about the subject matter of the lawsuit to an opposing counsel.

Club Exploria directs the Court to two cases, but neither case is akin to this one. The first case, *United States v. Ford*, exemplifies the Crime A/Crime B scenario presented in the ABA formal opinion, discussed above. 176 F.3d 376 (6th Cir. 1999). *See* ABA Formal Op. 95–396 (1995). In *Ford*, prosecutors placed an undercover informant in the defendant's cell to investigate allegations of criminal wrongdoing by the defendant. *Id.* at 378. Specifically, the prosecutors were acting upon a tip that the defendant was plotting to have an Assistant United States Attorney, an Internal Revenue Service Agent, and a Louisville Police Officer killed. *Id.* The defendant claimed that because he was represented by counsel for purposes of his money laundering and gambling offenses, it was improper for the prosecutors to ask him questions through the undercover informant. *Id.* at 381-82. The *Ford* Court disagreed, explaining, "[s]ince prosecutors were investigating an offense other than the offense for which Defendant was indicted, the contact does not pertain to the 'subject matter of the representation' as Rule 4.2 states." *Id.* at 382. Because Washburn was not calling in connection with a separate lawsuit or matter, *Ford* does not fit the facts of this case.

The facts of Club Exploria's second cited case, *Scanlan v. Eisenberg*, are also dissimilar to the facts here. 893 F. Supp. 2d 945. There, the plaintiffs sued various lawyers and a trustee company in connection with the purchase of certain shares of stock and loans made to insiders, as well as for legal malpractice and breach of fiduciary duties. *Id.* at 947. The plaintiffs hired Schiff Hardin LLP to represent them in the lawsuit and to advise one of the plaintiffs on her personal assets and investments. *Id.* To the latter end, a Schiff Hardin real estate attorney, Grossberg, was actively involved in financial advising for the plaintiffs. *Id.* Grossberg accordingly met with Greaves, an individual who held positions with MB Investments, an investment company closely linked to the plaintiffs' family, in order to advise the plaintiff about her assets and investments. *Id.* at 948. Greaves also happened to serve as a non-employee officer and director of the trustee company being sued by the plaintiffs. *Id.* After being alerted to the contact between Grossberg and Greaves, counsel for the trustee company in the lawsuit complained of the contact and alleged that Grossberg violated Rule 4.2 by communicating with a represented person. *Id.* at 949. The court found, however, that because Greaves only communicated with Grossberg in his MB Investments capacity, and because MB Investments was not a represented party in the lawsuit, there was no Rule 4.2 violation. *Id.* at 950-52. In this case, Washburn did not call the subject phone number in a different

Case 4:24-cv-01770-MWB    Document 32-1    Filed 06/10/26    Page 7 of 21

Moore v. Club Exploria, LLC, Not Reported in Fed. Supp. (2021)
2021 WL 260227

capacity; he called the number as counsel for Club Exploria. Washburn's communications, further, were not "separate from the litigation." *Id.* at 948. Washburn called the subject phone number in order to investigate the ownership of the subject phone number and thereby bolster Club Exploria's defense in this TCPA lawsuit. The *Scanlan* case is not analogous. The brief phone call here absolutely involved the subject of the representation.

### C. Lack of Consent

**\*8** There is no dispute in this case regarding consent. It is clear that Washburn did not have the consent of Moore's counsel to call him. Further, there is no evidence in the record or claim by Club Exploria that Washburn was otherwise authorized by law to communicate with Moore. The Court is further troubled by the fact that Washburn did not attempt to inform Moore's counsel about the improper contact after it occurred. Nor did Washburn memorialize the contact. It appears that Washburn hoped the phone call would be forgotten or go unnoticed. According to Club Exploria's counsel at the hearing, it appears Washburn made the phone call without even consulting the attorneys of record for Club Exploria in the case at the time (attorneys at Holland & Knight). Doc. [122] at 13. This is another strange, but ultimately not outcome-determinative, fact in the case. Washburn was not counsel of record at the time and nor was Katten. And even today, Washburn is not counsel of record. Nevertheless, it is undisputed that Washburn was acting as a counsel for Club Exploria on the day of the phone call. And regardless, the third element of a Rule 4.2 violation—the absence of consent—is met in this case.

Bringing it all together, Washburn violated Rule 4.2 on October 27, 2020. While Washburn had a good faith basis to believe that Don Jorgensen could be connected with the subject phone number, the facts demonstrate that he also had reason to believe that Moore could have answered his phone call as well. Washburn accordingly should have proceeded with caution, rather than with "an aggressive approach that results in ethical violations." *See In re Air Crash*, 909 F. Supp. at 1122. Already perilously close to the line demarcating unethical conduct from permissible conduct, *see Orso v. Bayer Corp.*, No. 04 C 0114, 2006 WL 2794975, at \*8 (N.D. Ill. Sept. 27, 2006) (citation omitted), once on the call, Washburn did not introduce himself, and once he did state who he was, he did not identify himself as counsel for Club Exploria. When Moore identified himself, it is clear that conversing further would unequivocally result in a Rule 4.2 violation. Then, not only did Washburn respond

to two questions from Moore after that point, but he also provided misleading responses about his identity and the facts surrounding his obtaining of the phone number. The Court therefore finds that a Rule 4.2 ethical violation took place on October 27, 2020 by Washburn.

## II. Disqualification and Work Product Production are Inappropriate Remedies Here

Having found an ethical violation, the Court turns to what the appropriate remedy is for that violation. Moore asks the Court to disqualify the Katten law firm from representing Club Exploria in this case. Doc. [107] at 7-9. As an additional sanction, Moore requests that Katten produce "all of its work product concerning Don Jorgensen's alleged use or ownership of the Subject Telephone Number." *Id.* at 9. In response, Club Exploria states that disqualification is a severe remedy not warranted here. Doc. [111] at 8. Club Exploria additionally avers that the two-minute phone call should not enable Moore to circumvent the work product privilege for documents relating to Don Jorgensen. *Id.* at 12-15.

### A. Disqualification

As the party moving for disqualification, Moore bears the burden "to show facts necessitating disqualification." *Guillen*, 956 F. Supp. at 1421 (citation omitted). That burden is a heavy one. *Id.* Disqualification is understood to be a drastic measure, one that courts are hesitant to impose. *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) (citation omitted); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *Bonds v. City of Chicago*, 451 F. Supp. 3d 900, 902 (N.D. Ill. 2020) (citation omitted); *Guillen*, 956 F. Supp. at 1421 (citation omitted); *Kole v. Loyola Univ. of Chicago*, No. 95 C 1223, 1997 WL 47454, at \*5 (N.D. Ill. Jan. 30, 1997) (citation omitted). "In addition to creating unnecessary delay, disqualification often deprives a party of [its] chosen legal advisor." *Guillen*, 956 F. Supp. at 1421 (citation omitted).

In determining whether to impose sanctions or which sanctions to impose, the court should consider "the seriousness of the violations and whether the violations were intentional, as well as the nature and extent of prejudice suffered or likely to be suffered by the parties in the future as a result of the violation." *In re Air Crash Disaster*, 909 F. Supp. at 1124 (citation omitted). At least one court in this Circuit has stated that some proof of prejudice is required to warrant disqualification. *Kole*, 1997 WL 47454, at \*5 (citation omitted).

Moore v. Club Exploria, LLC, Not Reported in Fed. Supp. (2021)
2021 WL 260227

**\*9** In *Orso v. Bayer Corp.*, attorneys called the opposing party drug company's 1-800 number to find out information about a drug at issue in the lawsuit. 2006 WL 2794975, at \*5. The court found that although the lawyers in the case, by speaking with the other party's employees without counsel's consent, "treaded dangerously close to the 'chalk line' demarcating sanctionable conduct from permissible conduct," the "absence of any prejudice, let alone significant prejudice," made disqualification an inappropriate remedy. *Id.* at \*8 n.8. The *Orso* Court instead opted to strike a letter in connection with the improper conduct, a remedy which the court found "sufficient to resolve [the] issue definitively and equitably." *Id.* at \*8.

In the *Mullen* case, discussed above, the court declined to impose a monetary or other severe sanction for an attorney's having submitted a short reply email to a class member. 334 F.R.D. at 665. In particular, the court found that given the nature of the attorney's single direct communication with a class member, which was simply a request for information (asking which parents wanted to be removed from the email list), it was "unclear how Mullen or the class were prejudiced." *Id.* "Without more," the court was "reluctant to impose a monetary or other severe sanction [ ] for [the attorney's] violation of Rule 4.2." *Id.*

Keeping in mind the severity of disqualification as a remedy and the importance of finding some proof of prejudice,[3] the Court declines to disqualify the Katten law firm as Club Exploria's counsel. Any "evidence" Moore provided during the two-minute phone call was consistent with Moore's discovery responses. Moore stated on the call that the subject phone number was his number and had been for a number of years. Doc. [107-4] ¶ 16. He also disavowed that a person named Don was associated with the subject phone number. *Id.* ¶ 12. Moore had already disclosed those facts in discovery, and he did not state anything that was new or sensitive. *Id.* ¶¶ 5-8. *See Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1004, 1018-19 (N.D. Ill. 2014) (disqualification of counsel inappropriate remedy for Rule 4.2 violation where information disclosed during improper contact was "readily available and known ... The [impermissible] meeting likewise produced no evidence for the plaintiff and did not give rise to attitudes that did not already exist"). Regardless, Club Exploria represented to the Court that it would not use any information obtained during the phone call in the case. Doc. [122] at 14. The Court accordingly finds that Moore has failed to show that he suffered prejudice as a result of the phone call.

**\*10** That being said, Moore's point is well taken that the Court's sanctions determination should not turn solely on the fact that Moore did not slip up and say something sensitive during the phone call. Doc. [112] at 11. The Court also considers the seriousness and intentionality of Washburn's actions. *In re Air Crash Disaster*, 909 F. Supp. at 1124. The Court does not find that Washburn was intentionally trying to obtain evidence unfairly from Moore. Instead, the record shows that Washburn was trying to investigate the veracity of the Jorgensen theory. An attorney does have a general right—and duty—to investigate the matter on behalf of the client. Furthermore, the seriousness of the conduct is lessened here by the brevity of the phone call and the fact that Washburn did not ask Moore questions, other than to identify himself. However, Washburn knew the risks of calling the subject phone number and should have had a better plan in place. In particular, the Court finds it serious that Washburn made two misrepresentations in the process.[4] In sum, Washburn's conduct was serious enough to warrant some sanctions, discussed below, but not serious enough to warrant disqualification of the law firm.[5]

Moore cites a litany of cases in support of his claim that disqualification is the proper remedy for Washburn's actions. Yet, in each of those cases,[6] the Rule 4.2 violation was more egregious and/or caused some sort of prejudice. *See Taylor v. Cook Cty. Sheriff's Office*, No. 13-cv-1856, 2020 WL 1047053, \*2 (N.D. Ill. Mar. 4, 2020) (plaintiff's attorney secretly contacted former in-house counsel for defendant and obtained privileged and confidential information and an affidavit including privileged information); *Inorganic Coatings Inc. v. Falberg*, 926 F. Supp. 517, 518 (E.D. Pa. 1995) (opposing counsel spoke with defendant for 90 minutes about the merits of the case and conversation "severely prejudice[d]" the defendants); *Weeks v. Independent School Dist.*, 230 F.3d 1201, 1204-05 (10th Cir. 2000) (counsel for plaintiff had multiple *ex parte* communications with employees of defendant regarding main issue in case and obtained and used affidavit from employee affirmatively in case); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080 (S.D.N.Y. 1989) (attorney for defendant engaged in one and one-half-hour conversation with plaintiff regarding merits of case and failed to timely place firewall between attorney and other members of law firm). Here, Washburn's conduct was quick and did not lead to an affidavit or work product being used against Moore in the litigation. Moore's cases are therefore inapplicable to the facts here, and

Case 4:24-cv-01770-MWB    Document 32-1    Filed 06/10/26    Page 9 of 21

Moore v. Club Exploria, LLC, Not Reported in Fed. Supp. (2021)
2021 WL 260227

Moore has not met his burden in showing disqualification is necessary in this case.

### B. Production of Attorney Work Product

Moore also calls for the production of Katten's work product relating to Don Jorgensen's alleged ownership or use of the subject telephone number. Doc. [107] at 9-10.

Courts have ordered parties to produce notes, memoranda, and records made or exchanged during improper Rule 4.2 communications. For instance in *Goswami*, the court found that plaintiff's counsel violated Rule 4.2 by having lengthy meetings with a professor of the defendant university in an employment discrimination action. 8 F. Supp. 3d at 1015. As a result, the court ordered that the offending lawyers produce any materials shared with or by the professor in any phone conversation, email, or otherwise, as well as any notes, memoranda, or recordings relating to any improper conversations with the professor. *Id.* at 1019. Along those same lines in the *Air Crash Disaster* case, the court ordered that all of the questionnaires, which had been sent to the defendant's employees in violation of Rule 4.2, be returned to the airline defendants' counsel. 909 F. Supp. at 1125. *See also Inorganic Coatings*, 926 F. Supp. at 521 (ordering counsel to "produce all notes and memoranda related to the *ex parte* contact with Defendant Gregg Falberg").

 **\*11** The production of records related to or generated as a result of the *ex parte* contact, as exemplified in *Goswami*, *Air Crash Disaster*, and *Inorganic Coatings*, is equitable because it alleviates an unfair advantage gained by the prohibited Rule 4.2 communication. The production of notes, recordings, and other byproducts of improper contacts can even the playing field by showing the represented person's counsel what was learned during the course of the communication. That knowledge, when combined with a court-ordered prohibition on using the improperly gained information in the litigation, can assist the represented person's counsel in ensuring that the offending counsel does not use the information learned for impermissible means later in the case. Applying those principal considerations here, if Washburn had taken notes or made a recording of the phone call with Moore, the Court would order those records to be produced, in line with the above cases. However, Club Exploria has represented that there are no such records, and the Court accepts that representation. Doc. [122] at 3, 14.

Moore is advocating for a much broader production, one that would require Club Exploria to produce any attorney work product *relating to* Don Jorgensen's alleged use or ownership of the subject telephone number. *See* Doc. [107] at 9. That scope would necessarily pull in privileged work product compiled in the course of Club Exploria's investigation regarding the ownership of the subject phone number. The Court is not aware of, and Moore has not cited to, any authority in this jurisdiction holding that a Rule 4.2 violation warrants such an invasion of the attorney work product privilege. Regardless, Club Exploria has already produced non-privileged portions of the documents that led Washburn to believe that Donald Jorgensen was connected to the subject phone number. *See* Doc. [121]. The Court finds that production was sufficient for purposes of the Rule 4.2 violation that occurred in this case and declines to require further production from Club Exploria at this time.

### C. Briefing Costs

Although Moore's requests for disqualification and the production of attorney work product are denied, the Court does find that some remedy is warranted here. Courts "possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 303 (N.D. Ill. 1997) (internal quotation marks and citations omitted). That "inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Id.* Sanctions may include, not only disqualification, but also attorneys' fees, costs, and other monetary penalties. *Id.* The Court's discretion in selecting the appropriate sanction is broad, and the Court strives for proportionality in measuring out sanctions. *Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co.*, No. 15 C 1067, 2018 WL 4976813, at \*5 (N.D. Ill. Oct. 15, 2018) (citations omitted). Courts in this circuit have awarded the reasonable attorneys' fees and costs associated with briefing the sanctions motions in response to Rule 4.2 violations. *See Blanchard*, 175 F.R.D. at 305; *Goswami*, 8 F. Supp. 3d at 1019; *Parker*, 249 F. Supp. 2d at 1013.

Here, the Court finds that an award of the reasonable attorneys' fees and costs associated with briefing this motion strikes the appropriate balance and is proportional to Washburn's conduct. Disqualification and the production of attorney work product are too severe of remedies, given the lack of prejudice, the quickness of the phone call, and the absence of any intentional bad faith conduct, as discussed above. At the same time, granting no remedy would be disproportionate too, given the Rule 4.2 violation by Washburn and the potential that sensitive and privileged

Case 4:24-cv-01770-MWB    Document 32-1    Filed 06/10/26    Page 10 of 21

Moore v. Club Exploria, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 260227

information could have been disclosed. The combination of this opinion identifying Washburn's violation and the award of fees and costs is a sufficient and proportional remedy. Accordingly, the Court imposes and orders the Katten law firm to pay the reasonable attorneys' fees and costs associated with Moore's motion for sanctions. *See, e.g.*, *Goswami*, 8 F. Supp. 3d at 1019.

**Conclusion**

**\*12** For the reasons stated above, Plaintiff's Opposed Motion for Sanctions [107] is granted in part and denied in part. Club Exploria's counsel is ordered to pay for the attorneys' fees and costs incurred by Moore in bringing this motion.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 260227

Footnotes

1    Washburn is not an attorney of record in this case, but the Katten law firm is counsel of record for Club Exploria. Although Washburn is admitted to practice in Texas, state rules of professional conduct only apply on a matter not addressed by the ABA Model Rules or when the state professional rules are inconsistent with the ABA Model Rules. N.D. Ill. L.R. 83.50. Because ABA Rule 4.2 and Rule 4.02(a) of the Texas Disciplinary Rules of Professional Conduct are identical in all relevant respects, the Court applies and refers only to the ABA rule here.

2    It is worth mentioning that Washburn's lack of knowledge would not have absolved him of other ethical duties implicated by the October 27, 2020 phone call. Rule 4.1 requires that attorneys not make false statements of material fact during the course of representation. Model R. Prof. Conduct 4.1 (ABA 2020). Washburn stated that he was not associated with any company, and that he received the subject phone number from Don – both of which are not true. Doc. [107-4] ¶¶ 15, 19, 20-21.

3    Moore argues that prejudice is not required for the Court to order disqualification as a sanction and cites three Seventh Circuit opinions in support. Doc. [112] at 9. Initially, the Court is doubtful that Moore's cases are directly on point, as they do not pertain to disqualification motions for ethical violations. *See Patrick v. City of Chicago*, 974 F.3d 824, 832 (7th Cir. 2020) (affirming district court's "judgment call" in denying posttrial motion for dismissal of case for witness' lies in pretrial deposition); *Barnhill v. United States*, 11 F.3d 1360, 1370 (7th Cir. 1993) (reversing district court's decision to enter judgment against government for conduct of government's counsel); *Daniels v. Brennan*, 887 F.2d 783, 785 (7th Cir. 1989) (affirming district court's dismissal for want of prosecution despite lack of prejudice shown). In any event, the Court's finding is based not only on the lack of prejudice, but also the seriousness and intentionality of Washburn's actions. *In re Air Crash Disaster*, 909 F. Supp. at 1124.

4    To the extent that any counsel claims that Katten is not a company but an LLP, the Court would caution counsel not to split hairs on such a sensitive and important matter as a Rule 4.2 violation. Furthermore, Club Exploria is clearly a company and Washburn was acting on its behalf.

5    Moore argues that disqualification of the firm is appropriate here, as Katten has only been tangentially involved in the case. Doc. [112] at 8. Moore declares that "[g]iven Katten's representation of Defendant only began recently, Defendant cannot possibly be relying on Katten's intimate knowledge of the case for its defense." *Id.* Even if that were true, disqualification is still a drastic measure, and a party has the prerogative to proceed with counsel of its choice. *Taylor v. Cook Cty. Sheriff's Office*, No. 13-CV-1856, 2020 WL 1047053, at *1 (N.D. Ill. Mar. 4, 2020).

6    Moore also cites to *Logan v. Cooper Tire & Rubber Company*, 5:10–CV–3–KSF, 2011 WL 3475423 (E.D. Ky. Aug. 9, 2011), but that decision was reversed upon a motion for reconsideration. *Logan v. Cooper Tire & Rubber Co.*, No. 5:10-CV-3-KSF, 2011 WL 8183936, at *1 (E.D. Ky. Oct. 5, 2011).

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1047053

⚑ KeyCite Yellow Flag

Distinguished by Moore v. Club Exploria, LLC, N.D.Ill., January 26, 2021

2020 WL 1047053
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Percy R. TAYLOR, Plaintiffs,

v.

COOK COUNTY SHERIFF'S

OFFICE, et al., Defendants.

Case No. 13-cv-1856
|
Signed 03/04/2020

**Attorneys and Law Firms**

Richard F. Linden, Law Offices of Richard Linden, Peter Vincent Bustamante, Law Offices of Peter V. Bustamante, Chicago, IL, Dana L. Kurtz, Kurtz Law Offices, Ltd., Hinsdale, IL, for Plaintiffs.

Nile N. Miller, Pavlina Kochankovska, Patricia Maria Fallon, Cook County State's Attorney's Office, Robert Thomas Shannon, Grace E. Mangieri, Gretchen Harris Sperry, James Matthias Lydon, Virginia Brette Bensinger, Vincent Michael Rizzo, Hinshaw & Culbertson LLP, Colleen B. Cavanaugh, O'Rourke, Hogan, Fowler & Dwyer, LLC, Chicago, IL, for Defendant Cook County Sheriff's Office.

Grace E. Mangieri, Gretchen Harris Sperry, James Matthias Lydon, Virginia Brette Bensinger, Vincent Michael Rizzo, Hinshaw & Culbertson LLP, Patricia Maria Fallon, Cook County State's Attorney, Chicago, IL, for Defendant Thomas Dart.

John Joseph Rock, Andrew Joseph Grill, Catherine MacNeil Barber, Cory D. Anderson, James Bryan Novy, Patrick R. Moran, Stacy Ann Benjamin, Rock Fusco & Connelly, LLC, Patricia Maria Fallon, Cook County State's Attorney, Chicago, IL, for Defendants Patrick Fitzgerald, Estate of Patrick Murphy, Gregory Ernst.

James Chandler, Mona E. Lawton, Nile N. Miller, Cook County State's Attorney's Office, Kevin William Frey, Laner Muchin, Ltd., Chicago, IL, for Defendant County of Cook.

Grace E. Mangieri, Virginia Brette Bensinger, Vincent Michael Rizzo, Hinshaw & Culbertson LLP, Chicago, IL, for Defendants Joseph Ways, Zelda Whittler.

<u>**MEMORANDUM OPINION AND ORDER**</u>

MARY M. ROWLAND, United States District Judge

**\*1** Defendants Sheriff Thomas J. Dart, Zelda Whittler, Joseph Ways, and Cook County Sheriff's Office move to disqualify Dana Kurtz, Richard Linden, and Peter Bustamante, and their affiliated law firms from further representation of Plaintiff Percy Taylor ("Taylor"). For the reasons stated below, Defendants' motion [416] is granted in part and denied in part. The Court disqualifies Dana Kurtz, but not Richard Linden or Peter Bustamante.

**I. Background**

Defendants argue that Taylor's counsel secretively contacted and communicated with a former attorney of the Sheriff's Office, Mr. John Maher, who represented the Sheriff's Office Police Department at Taylor's *Loudermill* hearing in March 2011. Defendants contend that Taylor's counsel obtained privileged and confidential information from Mr. Maher directly related to this case, in violation ABA Rules 4.2 and 4.4(a). They also argue that Mr. Maher violated ABA Rule 1.9. In response, Taylor's counsel maintain that in contacting Mr. Maher, they took care to ensure that no confidential or privileged information would be disclosed. They further argue that Mr. Maher's affidavit does not contain any information protected by the attorney-client privilege or the work product doctrine.

In this 2013 case, the background and procedural history has been discussed in prior opinions. *See Taylor v. Cook Cty. Sheriff's Office*, 2018 U.S. Dist. LEXIS 168573 (N.D. Ill. Sep. 30, 2018); 2019 U.S. Dist. LEXIS 159134 (N.D. Ill. Sep. 16, 2019). Relevant to the present motion, on May 14, 2018, Ms. Kurtz filed her appearance in this case. (Dkt. 203). On December 8, 2018, Ms. Kurtz contacted Mr. Maher, asking if he remembered Mr. Taylor's case. (Dkt. 416-15, Exh. O). In January 2019, Mr. Linden and Mr. Bustamante spoke to Mr. Maher about his affidavit. (Dkt. 370-1, Linden Aff.). In February 2019, Taylor's counsel produced Mr. Maher's affidavit (Dkt. 344-2, Mayer Aff.), which was three months after the close of discovery. *See Taylor*, 2019 U.S. Dist. LEXIS 159134, at \*23.

2020 WL 1047053

Defendants filed the present motion to disqualify Taylor's counsel on April 10, 2019, and the motion is fully briefed.

## II. Standard

The Court has discretion in deciding a motion to disqualify an attorney. *See Ross v. United States*, 910 F.2d 1422, 1432 (7th Cir. 1990). Deciding such a motion requires balancing "the sacrosanct privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice." *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983). "[D]isqualification is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.' " *Id.* (citation omitted). The party moving for disqualification "bears a heavy burden of proving facts required for disqualification." *alfaCTP Sys. v. Nierman*, 2016 U.S. Dist. LEXIS 20496, 2016 WL 687281, at *10 (N.D. Ill. Feb. 19, 2016) (citation and quotations omitted). In a two-step analysis, the Court determines whether there has been an ethical violation, and if so, "the court then determines whether disqualification is appropriate." *Singer v. PrimeSource Health Grp., LLC*, 2018 U.S. Dist. LEXIS 102012, 2018 WL 3036955 at *5 (N.D. Ill. June 19, 2018) (citations omitted).

## III. Discussion

### A. ABA Rules 4.2 and 4.4(a)

 **\*2** Under American Bar Association Model Rule of Professional Conduct ("ABA Rule") 4.2, in representing a client, "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." ABA Rule 4.4(a) provides that "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

As a judge in this district recently explained, "read together, [ABA] Rules 4.2 and 4.4 allow an attorney to communicate with a former constituent, but limits those communications to non-confidential and non-privileged information." *Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No.*

*1, Pension Tr. Fund*, 2019 WL 447622, at *6, 2019 U.S. Dist. LEXIS 17798 at *17 (N.D. Ill. Feb. 5, 2019).

### B. Ethical Violation

The Court finds that Taylor's counsel violated ABA Rules 4.2 and 4.4. While there is no general prohibition on communication with a former employee, those communications cannot disclose non-confidential and non-privileged information. *See Harris Davis Rebar, LLC*, 2019 WL 447622, at *6, 2019 U.S. Dist. LEXIS 17798, at *17. Mr. Maher was the Assistant General Counsel for the Sheriff's Office Police Department when Taylor had his *Loudermill* hearing. (*See* Dkt. 416 at 2; Mayer Aff.).[1] Mr. Maher represented the Sheriff's Office at that hearing that led to Taylor's termination and ultimately to Taylor filing this lawsuit.

Taylor's counsel do not dispute that they communicated with Mr. Maher about Taylor's *Loudermill* hearing and this case. Nor do they dispute that they did not alert defense counsel that they were reaching out and speaking to Mr. Maher. But, they argue, no confidential or privileged information was disclosed. Mr. Maher's affidavit belies this position. In his affidavit he states, "[i]n Taylor's case, management insisted that the hearing be conducted before all reasonable investigative leads were pursued and finalized, which I believe is unusual and not consistent with practice and procedure and accepted due process." (Maher Aff. ¶6). And, "[b]ased on the evidence, there was insufficient evidence to proceed to a *Loudermill* hearing in Taylor's case." (*Id.* ¶8).

The statements in Mr. Maher's affidavit disclose information protected by the attorney-client privilege, work product doctrine, and/or his duty of confidentiality. The Court agrees with Defendants that the statements in paragraphs 5, 6, and 8 disclose Mr. Maher's mental impressions, conclusions, opinions, and legal theories concerning Plaintiff's *Loudermill* hearing. The ethical rules require attorneys to refrain from discussing confidential *or* privileged information. *See Harris Davis Rebar, LLC*, 2019 WL 447622, at *6, 2019 U.S. Dist. LEXIS 17798, at *17; *Chamberlain Grp., Inc. v. Lear Corp.*, 270 F.R.D. 392, 398 (N.D. Ill. 2010) ("it is generally an improper litigation tactic to use a disgruntled employee to secretly obtain non-public internal business documents from an opposing party.") (internal citations and quotation omitted); Restatement (Third) of the Law Governing Lawyers § 102 (2000) ("A lawyer communicating with a nonclient ...

may not seek to obtain information that the lawyer reasonably should know the nonclient may not reveal without violating a duty of confidentiality to another imposed by law.").

**\*3** The information in Mr. Maher's affidavit is clearly information he only knew or learned by virtue of being counsel for the Sheriff's Office in Taylor's case. His affidavit reveals privileged information (e.g. "[i]n Taylor's case, management [Maher's client at the time] insisted that the hearing be conducted before all reasonable investigative leads were pursued and finalized") and his work product (e.g. "there was insufficient evidence to proceed to a *Loudermill* hearing in Taylor's case."). Plaintiff's argument that Mr. Maher did not reveal privileged information is unavailing.

## C. Disqualification

Having found Taylor's counsel violated the ethical rules, the Court concludes that the circumstances warrant disqualification of Ms. Kurtz, but not Mr. Linden and Mr. Bustamante. On November 14, 2018, Judge Pallmeyer disqualified Ms. Kurtz in another case under similar circumstances. (*see* Dkt. 416-26; *Nawara v. County Of Cook et al.*, 17-cv-02393). Less than one month later, Ms. Kurtz reached out to Mr. Maher. She not only contacted a former employee of the Defendant, she contacted a former *attorney* of the Sheriff's Office who had privileged and confidential information about Taylor's case. Clearly Ms. Kurtz did not reach out to Mr. Maher simply to find out how *Loudermill* hearings generally work. She asked him about "*this case*". (Dkt. 416-15) (emphasis added).

These facts also distinguish this case from the *Harris Davis Rebar* case. There, the court found an ethical violation, but did not believe the circumstances warranted disqualification. In that case, the former employee was not a former attorney for the party, and in addition, the court "accept[ed] the representations by the Fund's counsel that they researched the ethical and legal implications of doing so and believed themselves justified." 2019 WL 447622 at \*7, 2019 U.S. Dist. LEXIS 17798 at \*20. Here, by contrast, Ms. Kurtz had been disqualified from another case a mere three weeks before she reached out to Mr. Maher for purposes of getting information for this case, engaging in the same conduct that resulted in her disqualification in *Nawara*.

Ms. Kurtz's disciplinary history and the express warnings from the Seventh Circuit Court of Appeals make this case even more troublesome. In *Rojas v. Town of Cicero*, the Seventh Circuit advised the district judge to "consider Kurtz's disciplinary history, which is substantial", and further stressed that "Kurtz's unwillingness to conform her conduct to requirements laid down by judicial orders or rules of procedure is unlikely to change unless courts respond firmly." 775 F.3d 906, 909-10 (7th Cir. 2015). *See also Fuery v. City of Chi.*, 900 F.3d 450, 468 (7th Cir. 2018) (affirming decision to sanction Kurtz and her client explaining "[w]hen an attorney repeatedly violates the standards and oaths of the profession, then a court may take notice of that attorney's disciplinary history when evaluating whether sanctions are appropriate.").

Ms. Kurtz and her firm are disqualified from this case. However, the Court will not disqualify Richard Linden and Peter Bustamante and their firms. Mr. Linden and Mr. Bustamante have been counsel for Taylor since March and April of 2017, respectively. (Dkts. 143, 146). In response to the disqualification motion, Mr. Linden filed a declaration stating that he and Mr. Bustamante spoke to Mr. Maher in January 2019, for the first time. (Linden Aff. ¶¶ 29, 33). The Court credits that statement. The emails between Ms. Kurtz and Mr. Maher (Dkt. 416-15), establish that Ms. Kurtz initiated contact with Mr. Maher. Certainly this Court is troubled by Mr. Linden's and Mr. Bustamante's decision not to halt the communication with Mr. Maher or disclose to defense counsel what they were doing, but the Court does not view their conduct to be as serious as Ms. Kurtz's.

**\*4** In addition, the Court considers that disqualification can impede a party's ability to proceed with counsel of his choice and inevitably disrupts the litigation. *See Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 719 (7th Cir. 1982). This case involves a single plaintiff, has been pending nearly seven years, and is set for trial soon, so the Court seriously considers the impact of leaving Mr. Taylor without an attorney at this stage of the litigation. Mr. Linden and Mr. Bustamante have been Mr. Taylor's counsel for longer than Ms. Kurtz. As described in Mr. Linden's affidavit, he and Mr. Bustamante are Taylor's "primary counsel", and "[u]ntil recently, Ms. Kurtz had minimal involvement in this case." (Linden Aff. ¶¶ 19, 22). Therefore, considering the particular circumstances in this case, the Court does not believe disqualification of Mr. Linden and Mr. Bustamante is warranted. Ms. Kurtz is to have no further involvement in the case or contact with Mr. Linden, Mr. Bustamante or Mr. Taylor about this case.

Taylor v. Cook County Sheriff's Office, Not Reported in Fed. Supp. (2020)
2020 WL 1047053

**D. Taylor's Objection to Submission of Exhibits for In-Camera Review**

Taylor filed a motion objecting to Defendants submitting *ex parte* exhibits [406] in connection with this motion. The Court did not rely on any of the exhibits submitted for *in camera* review in order to reach the decision in this opinion. The motion [406] is denied as moot.[2]

**IV. Conclusion**

For these reasons, motion by Defendants Sheriff Thomas J. Dart, Zelda Whittler, Joseph Ways, and Cook County Sheriff's Office to disqualify [416] is granted in part and denied in part. Taylor's motion [406] is denied as moot. The Court disqualifies Dana Kurtz and her firm, but not Richard Linden or Peter Bustamante and their firms.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1047053

Footnotes

1    The exact dates of Mr. Maher's employment at the Sheriff's Office, as described by Plaintiff's and Defendants' counsel do not match, but that discrepancy is not material to the present motion.

2    The Court has destroyed the documents provided to be reviewed *in camera.*

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 1628907

⚑ KeyCite Yellow Flag

Distinguished by Golden v. Brethren Mutual Insurance Company, M.D.Pa., July 17, 2019

2004 WL 1628907
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

PENDA CORP., Plaintiff
v.
STK, LLC, Defendant

No. Civ.A. 03–5578, Civ.A. 03–6240.
|
July 16, 2004.

**Attorneys and Law Firms**

Alfred W. Zaher, John P. Donohue, Jr., Woodcock Washburn LLP, Philadelphia, PA, David A. McClaughry, George D. Moustakas, Harness, Dickey & Pierce, Troy, MI, for Plaintiff.

John M. Adams, Price & Adams, Pittsburgh, PA, for Defendant.

*MEMORANDUM AND ORDER*

MCLAUGHLIN, J.

**\*1** The plaintiff in these consolidated patent infringement cases, Penda Corporation ("Penda"), brings suit against STK, L.L.C. ("STK"), in civil action No. 03–5578, and against Rick's Auto Repair ("Rick's") and CAR–MIC Enterprises, Inc. ("CAR–MIC"), in civil action No. 03–6240. STK and CAR–MIC have filed three motions for sanctions against Penda. In two motions, STK and CAR–MIC seek sanctions for alleged violations of Rule 11 of the Federal Rules of Civil Procedure. In the third motion, STK has moved for sanctions for violations of Rules 4.2 and 8.4 of the Pennsylvania Rules of Professional Conduct for alleged *ex parte* communications with a person known to be represented by counsel. For the reasons set forth below, the Court will grant STK's Rule 11 motion, grant in part and deny in part STK's motion for sanctions for violations of the Rules of Professional Conduct, and deny CAR–MIC's motion.

I. *Procedural History*

Penda filed civil action No. 03–5578 (*"Penda I"*) on October 6, 2003, alleging patent infringement, unfair competition, and false designation of origin under the Lanham Act. Penda filed an amended complaint on October 14, 2004. On October 27, 2003, the defendant STK answered, counterclaimed, and filed a motion to transfer the action to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

In support of its motion, STK filed an affidavit claiming that it manufactures and sells the allegedly infringing pickup truck bedliners, has its principal place of business, maintains all of its records, and does substantially all of its business in the Western District. STK states that it sells its products to independent distributors outside of the Eastern District and that it does not do business here. The plaintiff is a Florida corporation whose principal place of business is in Michigan.

The plaintiff filed its opposition to the motion to transfer on November 7, 2003.[1] The plaintiff argued that STK sells the infringing product in the Eastern District through its largest distributor, Armor Deck. Although Armor Deck is located in New Jersey, Penda claimed that the distributor sells the infringing product directly to numerous retailers including Rick's and Stylecraft Auto Seat Covers ("Stylecraft") in Philadelphia. Penda claimed that Rick's and Stylecraft in turn sell the product to end users in this district.

On November 14, 2003, in further opposition to STK's motion to transfer, Penda sent a letter to the Court stating that it had filed a separate action against Stylecraft and Rick's for selling the infringing product in this district. The case against the retailers was docketed as civil action No. 03–6240 (*"Penda II"*). As later reaffirmed in attachment D of Penda's response to the Rule 4.2 motion, the letter stated that *Penda II* had been initiated because STK, in its motion to transfer, claimed that it did not offer the product for sale in this district, that it would not withdraw its motion to transfer, and that it would oppose any motion to amend the complaint to include the retailers.

**\*2** The Court held a Rule 16 conference with counsel for the parties in *Penda I* on November 24, 2003. In its pre-conference submission, Penda indicated that *Penda I* and *Penda II* should be consolidated. STK opposed consolidation.

Before the conference, counsel for STK sent to the Court letters from Armor Deck, Stylecraft, and a representative of STK, which stated that neither STK nor Armor Deck had ever sold any STK product to either Stylecraft or Rick's. During the conference, counsel for Penda represented that prior to filing

the complaint in *Penda I,* they had made phone inquiries to a representative of STK and a representative of Armor Deck that gave them a good faith basis to believe that the retailers sold the allegedly infringing product in this district. Neither retailer had been served with the complaint in *Penda II* at the time of the conference.

On December 3, 2003, the Court entered a memorandum and order putting *Penda I* into suspense until the earlier of 60 days or the date when the retailer defendants responded to the complaint in *Penda II.* The Court stated that it would have granted the motion to transfer absent the existence of *Penda II,* and that it may yet do so even if the two cases were consolidated. The Court said, however, that it was reluctant to rule on the motion to transfer until it knew whether Penda would go forward with *Penda II* despite the evidence provided to Penda by STK.

On January 5, 2004, the plaintiff filed an amended complaint in *Penda II* adding CAR–MIC, keeping Rick's, but dropping Stylecraft as a defendant. Penda attached several photographs and some receipts in support of its allegation that CAR–MIC, a retailer in Lancaster, sells the allegedly infringing STK products in this district. The amended complaint contains no new allegations regarding Rick's.[2]

On February 2, 2004, Penda moved to consolidate the cases. STK filed its Rule 11 motion together with its opposition to consolidation on February 10, 2004.[3] On February 19, 2004, STK filed its motion for sanctions based on a violation of the Pennsylvania Rules of Professional Conduct. CAR–MIC, which had been served and is represented by counsel for STK, filed its Rule 11 motion on the same day. The Court heard oral argument on all the pending motions on April 28, 2004.

## II. *Relevant Facts*
The affidavits and documents submitted to the Court reveal that on October 6, 2003, a partner at the Woodcock Washburn firm, local counsel for Penda, directed a paralegal to call STK to inquire whether STK bedliners could be purchased in the Philadelphia area. The paralegal made the call and spoke to a person who identified himself as "Dan". STK has since identified this individual as Daniel Kuritz, a Customer Service Manager. Kuritz told the paralegal that STK did not sell its products in Philadelphia, but that she should contact their distributor, Armor Deck, who did.

The paralegal called Armor Deck and spoke to a person who identified himself as "Ray." The paralegal told Ray that her husband wanted to get a bedliner for his new pick-up truck. She asked if she could purchase an STK bedliner in Philadelphia. Ray said "yes" and gave her the name of two retailers: Stylecraft and Rick's. Ray told the paralegal to speak with "Eppie" at Stylecraft and with "Rick" at Rick's. Neither she nor any other agent of Penda ever called anyone at Stylecraft or Rick's.

**\*3** The paralegal made the calls between 4:00 p.m. and 4:30 p.m. on October 6, 2003. The *Penda I* complaint was filed at 6:10 p.m. on that day.

At oral argument, local counsel for Penda represented that he directed the paralegal to make the call to verify the allegations that venue was proper, but that he did not tell the paralegal what to say or how to conduct her calls. Local counsel for Penda also explained that prior to filing the suit, he visited the Armor Deck website and found that the allegedly infringing product was the only STK product Armor Deck advertised on the website. Apr. 28, 2004, Hr'g Tr. ("Hr'g Tr.") at 41–42, 57–60.

## III. *Motions for Sanctions*
In its sanction motion based on violations of the Rules of Professional Conduct, STK argues that the communication to Dan Kuritz violates: (1) Rule 4.2 because it was *ex parte* and concerned matters in which Penda knew STK to be represented; and (2) Rule 8.4(c), because neither Kuritz nor Ray were told that they were speaking to an agent of an attorney for litigation purposes. In its Rule 11 motion, STK argues that there was no basis in fact to support Penda's claim, made in its opposition to transfer, that Rick's and Stylecraft had sold the product in Philadelphia. STK also argues that Penda, relying on its baseless claim that the retailers sold the product, filed *Penda II* merely to defeat transfer.[4] In its Rule 11 motion, CAR–MIC argues that the amended complaint in *Penda II* is frivolous because it contains false factual allegations regarding the co-defendant, Rick's.

### A. *Violations of the Rules of Professional Conduct*
The Eastern District has adopted Pennsylvania's Rules of Professional Conduct. Loc. R. Civ. P. E.D. Pa. 83.6(IV)(B) (2003). Rule 4.2 provides in full:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the

Case 4:24-cv-01770-MWB    Document 32-1    Filed 06/10/26    Page 17 of 21

Penda Corp. v. STK, LLC., Not Reported in Fed. Supp. (2004)
2004 WL 1628907

lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Pa. Rules of Prof'l Conduct Rule 4.2 (2004)

Penda does not dispute that it knew that STK was represented by counsel or that it did not have consent of STK's counsel.[5] Penda instead argues that because the communication occurred prior to the filing of suit, Rule 4.2 does not apply. Penda also argues that even if the rule applies, Kuritz is not covered by the rule and the communication was not about the subject matter of the representation.

The Official Comment to Rule 4.2 expressly provides that the rule "also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question." Pa. Rules of Prof'l Conduct Rule 4.2 cmt. According to the language of this comment, the rule is applicable to STK even though it was not yet a party to a formal proceeding.

The plaintiff relies on *Faragher v. National Railroad Passenger Corp.,* No. 91–2380, 1992 U.S. Dist. LEXIS 1810, *4–*5, (E.D.Pa. Feb. 7, 1992), which held that Rule 4.2 does not apply before a complaint has been filed. *Faragher,* however, did not acknowledge the comment and so does not provide a reason why the comment's language should not apply.

 **\*4** At least two courts in the Third Circuit that have addressed the comment held that the rule applies pre-complaint. *See, e.g., United States v. Grass,* 239 F.Supp.2d 535, 540–41 (M.D.Pa.2003); *Inorganic Coatings, Inc. v. Falberg,* 926 F.Supp. 517, 519 n. 3 (E.D.Pa.1995). The Court agrees and finds that Rule 4.2 is applicable in this case.

This result comports with the reasoning behind the American Bar Association's ("ABA") 1995 amendment to the Model Rule. Because of the tendency of some courts to focus narrowly on the word "party" in the rule rather than on the word "person" in the comment, the ABA substituted the word "party" with the word "person" to clarify that the interests sought to be protected by the rule may equally well be involved when litigation is merely under consideration, even though it has not actually been instituted, and the persons who are potentially parties to the litigation have retained counsel with respect to the matter in dispute. *See* Excerpt from ABA Report Explaining the 1995 Amendment, reprinted in Stephen

Gillers & Roy D. Simon, Regulation of Lawyers: Statutes and Standards 279 (2000 ed.).

The next question is whether local counsel for Penda violated Rule 4.2. The Official Comment to the rule addresses how it applies to an organization such as STK:

> [T]his Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Pa. Rules of Professional Conduct Rule 4.2 cmt.

The rule, therefore, applies to *ex parte* communications with Kuritz if he is either (1) a person with managerial responsibility, (2) a person whose acts could be imputed to STK for the purposes of civil liability, or (3) a person whose statement may constitute an admission on the part of STK.

Kuritz is a customer service manager for STK. Penda argues that Rule 4.2 does not apply to Kuritz because he does not have the requisite level of managerial responsibility, notwithstanding his title. Pennsylvania federal courts have held that a person has the requisite managerial responsibility if he or she supervises a significant number of subordinates or exercises a significant amount of individual discretion in his day to day duties. *See Belote v. Maritrans Operating Partners,* No. 97–3993, 1998 U.S. Dist. LEXIS 3571, *6 (E.D.Pa. Mar. 20, 1998); *Carter–Herman v. City of Philadelphia,* 897 F.Supp. 899, 904 (E.D.Pa.1995).

In his affidavit, Kuritz says that his duties include receiving and processing all incoming sales calls. There is no evidence that he supervises a significant number of subordinates or that he exercises a significant amount of individual discretion. The Court cannot find on this record that Kurtiz has the requisite level of managerial responsibility.

 **\*5** The Court, however, finds that Kuritz is a person whose statements may constitute an admission on the part of the organization. An admission is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. Fed.R.Evid. 801(d)(2)(D); *see also Univ. Patents, Inc. v. Kligman,* 737 F.Supp. 325, 328 (adopting Rule 801(d)(2)(D) definition of "admission" for Rule 4.2 purposes).

Kuritz's statements may constitute an admission on the part of STK. They were made while he was on duty as an employee of STK. The statements address how and where a customer may purchase STK's products—a matter which is within the scope of his employment as a customer service manager responsible for receiving and processing sales calls. In fact, Penda relied on his statement to conclude that STK had a distributor who sold the bedliners in Philadelphia. The rule, therefore, applies to Penda's *ex parte* contact with Kuritz.

Because the Court finds that Kuritz's statements may constitute an admission by STK, it does not rule on whether he is also a person whose acts may be imputed to the STK for the purposes of civil or criminal liability.

Penda next argues that there was no Rule 4.2 violation because the communication did not regard the subject matter of the representation. The Court is unpersuaded. Whether or not STK sold or offered for sale infringing products in this district is directly relevant to this litigation. Indeed, as local counsel for Penda stated, the phone call to Kuritz was made to verify the allegation in the complaint that venue was proper in this district. Hr'g Tr. at 41–42. The Court, therefore, finds that local counsel for Penda violated Rule 4.2.

The Court does not want to overstate the violation. It was not egregious. But Rule 4.2 is designed to protect the represented but uncounseled layperson against overreaching by adverse counsel and to safeguard the integrity of the client-lawyer relationship. *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95–396 (1995). Penda's actions invaded both these interests.

There was no violation of Rule 8.4(c), which provides that "[i]t is professional misconduct for a lawyer to: ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The paralegal for local counsel may have engaged in misrepresentation when she failed to identify herself as an agent for the plaintiff and suggested that she was a potential customer. Under certain circumstances, a lawyer may be responsible for his paralegal's actions if he directs her to engage in the conduct or, knowing of the conduct, ratifies it. Pa. Rules of Prof'l Conduct Rule 5.3(c)(1)-(2). At oral argument, local counsel for Penda assured the Court that he merely directed her to make the call to verify whether the product could be purchased in the district, and that he did not instruct her in any particular way what to say, how to say it, or what to do. Hr'g Tr. at 41–42.

B. *Violation of Rule 11*

**\*6** Under Rule 11 any party must conduct a reasonable inquiry into the facts and the law in connection with every filing. *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.,* 999 F.2d 745 (3d Cir.1993). With respect to STK's Rule 11 motion, the core issue is whether in opposing the motion to transfer, the plaintiff did a reasonable inquiry into the facts to allow it to allege that STK had sold the bedliners in the past and were currently offering them for sale in Philadelphia through Rick's and Stylecraft. The Court finds that counsel for Penda did not conduct a reasonable enough inquiry.

Penda admitted at oral argument that its entire investigation into whether Rick's and Stylecraft sold the bedliners consisted of a visit to Armor Deck's website and the *ex parte* phone calls to STK and Armor Deck. It was not reasonable for Penda to have concluded on the basis of this investigation that Rick's and Stylecraft had sold the bedliners in the past and were currently offering them for sale.

In an email that the paralegal sent to her supervising attorney regarding her call, and which counsel for Penda submitted to the Court at oral argument, the paralegal states that she:

> ... called Armor Dick (sic) and spoke to Ray and explained that my husband wanted to get a bed liner for his new pick up. Ray then gave me the following two names where I could purchase bed liners. I then specifically asked if they were STK bed liners and Ray said 'yes, that he was an STK distributor.'

*See* November 4, 2003 email from paralegal to partner at Penda's local counsel.

Ray did not state that Rick's and Stylecraft had sold STK bedliners in the past or were currently selling them. Ray's statements are consistent with his merely assuring the paralegal that he is an STK distributor who could supply STK bedliners to the two retailers in Philadelphia if the paralegal ordered the bedliners from them. Counsel for Penda merely assumed, erroneously as it turns out, that Rick's and Stylecraft were currently selling the bedliners. It was unreasonable for Penda's counsel to make and rely on this assumption. It was also unnecessary to do so. Counsel could have visited or even just telephoned Rick's or Stylecraft to see if they sold the bedliners. Unlike STK, neither retailer was known to be represented by counsel in the matter at the time. The Court, therefore, finds that counsel for Penda violated Rule 11.

Case 4:24-cv-01770-MWB    Document 32-1    Filed 06/10/26    Page 19 of 21

Penda Corp. v. STK, LLC., Not Reported in Fed. Supp. (2004)
2004 WL 1628907

The Court, however, will deny CAR–MIC's motion for sanctions. Unlike STK, it is not clear how CAR–MIC was harmed by the violation of Rule 11. CAR–MIC argues that absent the allegations and suit against Rick's and Stylecraft, *Penda I* would have already been transferred and Penda would not have been compelled to sue or add CAR–MIC to keep the case here. The Court finds this unpersuasive. Penda appears to have complied with its Rule 11 obligations with respect to the claims it makes against CAR–MIC, and could have sued CAR–MIC even if *Penda I* had been transferred.

### C. *Remedies*

**\*7** Although Rule 4.2 contains no provisions regarding remedies for violations of the rule, federal courts have the inherent power to discipline attorneys practicing before them. *See In re Corn Derivatives Antitrust Litig.,* 748 F.2d 157, 160 (3d Cir.1984). Courts have broad, but not unlimited, discretion in fashioning an appropriate penalty or sanction to discipline attorneys and remedy the problems caused by improper *ex parte* contacts. *See In re Abrams,* 521 F.2d 1094, 1099 (3d Cir.1975); *Kligman,* 737 F.Supp. at 329.

Courts have fashioned various remedies for violations of Rule 4.2: preclusion of the use of the evidence and information obtained through such *ex parte* communication; requiring the production of all work product related to or generated as a result of the prohibited contact; disqualification of the offending attorney(s); the awarding of fees; and, in exceptional cases, dismissal of the pending litigation. *See, e.g., Belote,* 1998 U.S. Dist. LEXIS 3571 at \*21 (preclusion of evidence); *Kligman,* 737 F.Supp. at 328 (production of work product); *Inorganic Coatings,* 926 F.Supp. at 521 (disqualification of counsel); *Hill v. St. Louis Univ.,* 123 F.3d 1114, 1121 (8th Cir.1997) (affirming award of fees in preparing sanctions motions); *Link v. Wabash R.R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (dismissal of litigation).

STK seeks (1) the preclusion of evidence that was obtained through the *ex parte* contact; (2) disqualification of Penda's local counsel; and (3) reasonable expenses and fees associated with the sanction motion.[6]

The Court will preclude the plaintiff from using during this litigation any information obtained through the *ex parte* contact.[7] The plaintiff has already used the information gained through the communication to the detriment of STK. It would be inequitable to permit the plaintiff to keep any

advantage it may have gained from the ethical violation. *See Kligman,* 737 F.Supp. at 329.

The Court will deny STK's request for disqualification of Penda's local counsel. The Court must balance a party's right to be represented by counsel of his or her choice, as well as the opposing party's right to prepare and try its case without prejudice. *See id.* STK's ability to litigate the merits of the core issues of this case has not been sufficiently prejudiced by this violation to warrant a disqualification of Penda's local counsel. The communications did not deal with whether the bedliners infringed any of Penda's patents.

The Court will also deny STK's request for fees and costs associated with the 4.2 sanctions motion. As STK correctly points out, federal courts have awarded such fees for violations of Rule 4.2. *See Faison v. Thornton,* 863 F.Supp. 1204, 1218 (D.Nev.1993). These cases, however, involve egregious, willful, or bad faith violations of the rule. *See, e.g., Hill,* 123 F.3d at 1117 (plaintiff's counsel interviewed and obtained an affidavit from a chairperson of the defendant University despite having been warned in writing by opposing counsel that such contact would violate Rule 4.2). Indeed, *Faison,* upon which STK relies, involved a five-hour *ex parte* contact with a named defendant who reviewed documents relevant to the litigation during the communication.[8] 863 F.Supp. at 1211–12. Penda's violation of the rule does not rise to this level of egregiousness. The communication lasted a few minutes and was very limited in scope. Although local counsel for Penda should have known that the call to STK presented at least the potential for violating Rule 4.2, there is no evidence that the communication was done knowing such a violation would necessarily result.

**\*8** With respect to the Rule 11 violation, the Court may impose an appropriate sanction limited to an amount sufficient to deter repetition of the conduct. If warranted, the Court may also award to the party prevailing on the motion the reasonable expenses and fees in presenting the motion.[9] Fed.R.Civ.P. Rule 11(c)(1)(A), (c)(2). The Court finds that the violation of Rule 11 warrants the award of STK's expenses and fees associated with litigation of its Rule 11 motion. The Court will also grant STK's request for an award of its reasonable expenses and fees associated with the additional work STK had to put into litigating the transfer motion as a result of the Rule 11 violation. This sanction is imposed jointly and severally against Penda's local and lead counsel.

An appropriate Order follows.

Case 4:24-cv-01770-MWB    Document 32-1    Filed 06/10/26    Page 20 of 21

Penda Corp. v. STK, LLC., Not Reported in Fed. Supp. (2004)

2004 WL 1628907

*ORDER*

AND NOW, this 16th day of July, 2004, upon consideration of the defendant STK's Motion For Sanctions Pursuant to Fed.R.Civ.P. Rule 11 (Doc. No. 19 in civil action No. 03–5578), all responses and replies thereto, STK's Motion for Sanctions for Violations of the Rules of Professional Conduct (Doc. No. 25 in civil action No. 03–5578), all responses and replies thereto, and defendant CAR–MIC's Motion for Sanctions Pursuant to Fed.R.Civ.P. Rule 11 (Doc. No. 8 in civil action No. 03–6240), all responses and replies thereto, and following oral argument in the above captioned cases, IT IS HEREBY ORDERED, for the reasons stated in a memorandum of today's date, that:

1. The defendant STK's Motion for Sanctions Pursuant to Fed.R.Civ.P. Rule 11 is GRANTED. Lead and local counsel for Penda are jointly and severally liable for the reasonable costs and fees incurred by STK associated with said motion, as well as for the reasonable costs and fees associated with the additional work STK put into litigating its transfer motion as a result of the Rule 11 violation. STK shall file an application that outlines in detail such costs and fees on or before July 30, 2004;

2. The defendant STK's Motion for Sanctions for Violations of Rules of Professional Conduct is GRANTED in part and DENIED in part. The plaintiff is prohibited from using any information obtained as a result of the telephone conversations with Daniel Kuritz of STK and Ray of Armor Deck. The motion is denied to the extent it seeks to disqualify local counsel for Penda and to the extent it seeks reasonable fees and costs associated with the Rule 4.2 sanctions motion; and

3. The defendant CAR–MIC's Motion for Sanctions Pursuant to Fed.R.Civ.P. Rule 11 is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2004 WL 1628907

Footnotes

1    Local counsel for Penda signed the opposition and lead counsel designated themselves as "Of Counsel" on the opposition signature page.

2    To date, Rick's has not been served. At the April 28, 2004, oral argument, lead counsel for Penda stated that the summons for Rick's had expired, and that he had not sought to renew it.

3    On March 3, 2004, after holding an on-the-record status conference with counsel for Penda, STK, and CAR–MIC, the Court granted the motion to consolidate without deciding the motion to transfer.

4    STK also argues that there was no adequate basis in law for the opposition to transfer. Resolution of this issue is not necessary for the Court's decision.

5    Prior to litigating this matter, Penda, through its General Counsel and pre-suit counsel, negotiated with counsel for STK regarding the patents and bedliners at issue in this case.

6    STK had also requested the Court to order plaintiff and its counsel to produce all documents, recordings, notes, and memoranda relating to or generated as a result of the *ex parte* contact. The Court had previously ordered the plaintiff and its counsel to do so, and is satisfied that they have complied with that order.

7    This includes the fruit of that contact, namely, statements and information obtained from the telephone conversation with Ray at Armor Deck.

8    The Court notes that fees were granted in *Faison* pursuant to Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure. The ethical violations occurred during discovery and the court assumed that the above cited rules, which permit the award of fees and costs for discovery violations, applied. 863 F.Supp. at 1218. The Court makes no assessment of that assumption. The ethical violations here occurred before the advent of formal discovery.

Penda Corp. v. STK, LLC., Not Reported in Fed. Supp. (2004)

2004 WL 1628907

9    The record shows that STK complied with the safe-harbor provisions of Rule 11, which requires that any motion for sanctions pursuant to the rule shall not be presented to the Court unless, within 21 days after service of the motion on the opposing party the alleged violation is not corrected. *See* Fed.R.Civ.P. Rule 11(c)(1)(A).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.